SYDNEY A. TABER, PROSECUTOR, v. STATE BOARD OF REGISTRATION AND EXAMINATION IN DENTISTRY OF NEW JERSEY, DEFENDANT.

Decided July 15, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Brogan, Hague & Malone* (*Thomas J. Brogan*).

For the defendant, *Walter D. Van Riper* and *Joseph A. Murphy*.

The opinion of the court was delivered by

BODINE, J.  For the sake of clarity and discussion, we quote from the opinion of Mr. Chief Justice Case reported in 137 *N. J. L.* 161, as follows:

"Sydney A. Taber, a licensed dentist of the State of New Jersey, was, after hearing by the State Board of Registration and Examination in Dentistry of this state, found guilty of violating section 45:6–7 subdivision (h) of title 45 of the Revised Statutes (as amended *Pamph. L.* 1941, *ch.* 316;

*Pamph. L.* 1945, *ch.* 193) on the ground *inter alia* that he was employed by an unlicensed manager, proprietor, operator and conductor as defined in section 45:6–19, title 45 of the Revised Statutes; and his license was suspended for six months. We have particularized that specific finding as a basis for remarks that follow. The cited statute, in subdivision (h), provides in part as follows:

" 'Any license to practice dentistry may be revoked or suspended by the board upon proof to its satisfaction that the licensee: \* \* \*.

" 'h. Has been employed by an unlicensed manager, proprietor, operator or conductor as defined in section 45:6–19 of this Title \* \* \*.'

"There are other, but severable, provisions in subdivision 'h.' We find it unnecessary, for the purposes of this decision, to pass upon their constitutionality. *R. S.* 45:6–19 (as amended *Pamph. L.* 1941, *ch.* 316; *Pamph. L.* 1942, *ch.* 38), referred to in the above enactment, provides:

" 'The terms manager, proprietor, operator or conductor as used in this chapter shall be deemed to include any person who

" '(1) Employs operators or assistants; or

" '(2) Places in the possession of any operator, assistant, or other agent such dental material or equipment as may be necessary for the management of a dental office on the basis of a lease or any other agreement for compensation for the use of such material, equipment or office; or;

" '(3) Retains the ownership or control of dental material, equipment or office and makes the same available in any manner for the use by operators, assistants or other agents; provided, however, that the above shall not apply to *bona fide* sales of dental material or equipment secured by chattel mortgage.' "

The case was remanded for us to find the facts and determine whether the action of the board in revoking or suspending the license was proper under the statute.

We think it was implicit in our decision that the facts justified the finding of the State Board. Nevertheless, in view of the mandate, we proceed to examine the proofs.

The first witness called was Dr. James A. Morton, who, during the year 1943, had an agreement with David Locks, of Rochester, New York. He had answered an advertisement in the *New York Times* for a New Jersey dentist. Pursuant to his answer, he met a Miss Howard and Mr. Locks at the Waldorf Astoria Hotel. Locks asked Morton if he would like to operate the best equipped dental office in the State of New Jersey. He brought out a blueprint showing the layout of the office at 786 Broad Street, Newark. Locks was to advance sufficient funds to set up the office in all phases such as rent, equipment, supplies and funds to carry on until the office was on a paying basis. Involved in the matter was the Dental Acceptance Company, of Rochester, and Locks.

Later Dr. Sydney Taber took over the office and the lease. The secretary of the Firemen's Insurance Company granted the assignment of the lease from the Dental Acceptance Company or David Locks. It had credit reports and was willing to accept the Acceptance Company or Locks as tenants. Taber was a subtenant subject to guarantees from the financier.

Dr. George E. Barker worked for Dr. Morton and was there when Dr. Taber assumed full control of the office. The materials used were furnished by Locks and Barker even talked salary with him. The representative of a broadcasting company did business with Dr. Morton and Dr. Taber. When he discussed the contract with Dr. Morton, Mr. Locks spoke to him regarding the program that he liked and approved.

A reading of the whole testimony demonstrates that every detail of the business was handled and directed by Locks or his affiliated companies. Dr. Taber was a mere employee without freedom of professional action. The evidence is, in part, circumstantial and relates to others. Wrongful conduct, in many instances, is so shown. The inferences are for the trier of the facts and support the conclusion of the Board.

We have no difficulty in finding that the prosecutor of this writ had been employed by an unlicensed manager, proprietor, operator or conductor as defined in the statute.

Judgment, in accordance with the mandate of the Court of Errors and Appeals, shall be entered.