79 N.J. Super. 76 (1963)
190 A.2d 557
STATE BOARD OF MEDICAL EXAMINERS OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES WAGNER, LAB DELIVERY SERVICE, INC., ABRAHAM J. BLAIVAS AND MURRAY A. BLAIVAS, TRADING AS KINGS COUNTY RESEARCH LABORATORIES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1963.
Decided April 29, 1963.
*78 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Samuel M. Sprafkin (of the New York Bar) argued the cause for appellants (Messrs. Rothbard, Harris & Oxfeld, attorneys; Mr. Doane Regan, of counsel).
Mr. Robert D. Kroner, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Alfred J. D'Auria, of counsel; Mr. Irwin R. Rein, on the brief).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendants were convicted in the Bergen County District Court of violating N.J.S.A. 45:9-42.21, upon complaint of the State Board of Medical Examiners of New Jersey. Plaintiff was given a judgment allowing a recovery from each of the defendants of a $100 penalty and costs of the proceedings. This is an appeal by defendants from that judgment.
N.J.S.A. 45:9-42.21 provides that whoever conducts, operates or directs a bio-analytical laboratory in this State without having first obtained from the State Board of Medical Examiners a license to do so, or who performs such bio-analytical laboratory work except in a registered bio-analytical laboratory under the specific direction and supervision of a licensed bio-analytical laboratory director, or who solicits, receives, accepts or delivers material originating from the *79 human body on behalf of any bio-analytical laboratory located without the State and which is not under the direction of a licensed bio-analytical laboratory director and registered under this act, "or similarly licensed and registered under the laws of the State in which it is located," or who violates any of the provisions of this act or rules of the Board issued pursuant thereto, shall be liable to a penalty of not less than $100 nor more than $500 for each such offense. This penalty shall be sued for and recovered in the name of the board in a summary manner, pursuant to the penalty enforcement law and the rules of the Supreme Court.
The facts are undisputed and have been stipulated in the trial record. It is admitted that the defendant, Charles Wagner, did receive, accept or deliver material originating from the human body, on behalf of the defendant, Laboratory Delivery Service, Inc., and the defendant, Kings County Research Laboratories, a bio-analytical laboratory of the State of New York which is not under the direction of a bio-analytical laboratory director licensed and registered under our law. It is also stipulated that Kings County Research Laboratories did receive said material originating from the human body.
The defendants concede that they come within the purview of N.J.S.A. 45:9-42.21, but it is their contention that it was erroneous to impose penalties against them, because they are "similarly licensed and registered under the laws of the State" of New York in which they are located. The evidence shows that Kings County Research Laboratories, Murray A. Blaivas and Abraham J. Blaivas, as owners and directors, is licensed and registered under section 13.05 of the New York City Health Code.
The State Board of Medical Examiners contends that this license and registration under the New York City Health Code is not equivalent to license and registration under laws of the State of New York. The State Board further maintains that the defendant laboratory is not "similarly licensed" within the meaning of N.J.S.A. 45:9-42.21.

*80 I.
The first inquiry is whether Kings County Research Laboratories, by virtue of its license and registration under the New York City Health Code, can be deemed to be licensed and registered under the laws of the State of New York in which it is located.
The State Board argues that our Legislature did not reasonably intend that a license to conduct a bio-analytical laboratory, obtained pursuant to the provisions of a "municipal ordinance," should come within the exception of N.J.S.A. 45:9-42.21, whereby sanction is given to such a laboratory without the State licensed by the "laws of the State" where it is located. It is true that a municipal ordinance is not normally equated with state law. But the State Board overlooks the fact that the New York City Health Code is more than a mere municipal ordinance. The New York State Legislature has, by legislative enactment, elevated the city health code to the status of state law applicable within the city.
This was accomplished when the New York State Legislature enacted chapter 610 of the 1961 Session Laws of New York, effective April 17, 1961, amending section 558 of the New York city charter to read as follows:

"§ 558. Health Code
a. The health code which is in force in the city on the date at which this section takes effect and all existing provisions of law fixing penalties for violations of the code and all regulations of the board of health on file with the city clerk on the date when this section as amended takes effect shall continue to be binding and in force except as amended or repealed from time to time. Such code shall have the force and effect of law." (Emphasis added)
The State Board contends that our Legislature intended by the expression "laws of the State" only those enactments by the foreign state legislature which had state-wide applicability, and not merely a state law applicable only to New York City. We find no sound basis for that contention. An enactment *81 by the legislature is a law of the state, even though it may be special, local or private in character. So, too, our Legislature was presumably well aware of the common device of classifying the political subdivisions of the State for the purpose of legislation and then adopting laws general in language, but, in practical effect, operative only within certain counties or municipalities of the State. Thus, we have counties and cities of various classes, towns, townships, boroughs and villages, with "general" laws applicable only to those within the classification. We take judicial notice that New York City is made up of five counties and is inhabited by approximately 8,000,000 people  more than the population of our entire State. It is in a class by itself and subject to acts of the New York State Legislature applicable only to that metropolis. Such legislative enactments are no less the law of the State of New York, even though limited in application to New York City.
We have also been advised that there is no state-wide law in New York which provides for the licensing of general bio-analytical laboratories, like that of Kings County Research Laboratories, so that the only way by which such a laboratory located in New York City may be licensed and registered in a manner comparable to our law is by compliance with section 13 of the city health code. The defendant laboratory was so licensed and registered.
Accordingly, we conclude that the defendant laboratory was licensed and registered under the laws of New York, within the meaning of the exception set forth in N.J.S.A. 45:9-42.21.

II.
The second inquiry is whether defendants' laboratory is "similarly" licensed and registered. The State Board contends that it is not, because there are essential differences between the requirements of our law for such a license and those of the New York City Health Code.
*82 N.J.S.A. 45:9-42.21 does not define the word "similarly." The parties agree that this word does not require identical legislative treatment of the regulation of such laboratories in both states. In using the word "similar" in a statute, "There is an implied allowance for some degree of difference." Pine Grove Manor v. Director, Div. of Taxation, 68 N.J. Super. 135, 142 (App. Div. 1961). As stated in Fletcher v. Interstate Chemical Co., 94 N.J.L. 332, 334 (Sup. Ct. 1920), affirmed o.b. 95 N.J.L. 543 (E. & A. 1921):
"The word `similar' is generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness to some other thing, and not to mean identical in form and substance, although, in some cases `similar' may mean `identical' or `exactly alike.'"
The State Board concedes that "similarly" in this statute does not mean "identical" or "exactly alike," but maintains that the licensing and registering process must be under "similar laws."
The State Board relies upon five points of difference between the provisions of our law and those in the New York City Health Code which, in its opinion, disqualify defendants' laboratory as one "similarly" licensed and registered. That these differences exist is undisputed. In evaluating their materiality, it is well to note the legislative purpose in adopting our 1953 "Bio-analytical Laboratory and Laboratory Directors Act," as expressed in the preamble to that enactment, to wit:
"Whereas, The health and lives of the citizens of the State of New Jersey are endangered by incompetent supervision of bio-analytical laboratory tests, and
Whereas, A due regard for public health and preservation of human life demands that none but scientists, competent and qualified by sufficient education and training in the fundamental sciences, and experienced in their applications in the bio-analytical laboratory, shall be permitted to direct and supervise the work of such laboratories."
*83 Mindful of the legislative purpose, we turn to the five points of difference.

(1) EXAMINATION REQUIREMENT
The New York City Health Code does not require applicants for a bio-analytical director's license to pass a written examination. Our law requires applicants to pass a written examination prepared by the State Board of Medical Examiners. N.J.S.A. 45:9-42.3 and 42.9. By way of exception, our statute does not require a physician to take an examination and none is required of those who conducted a laboratory for a two-year period prior to the effective date of our act, September 18, 1953, provided application for such license was made within three months of that date.
In lieu of a written examination, the New York City Health Code requires very high standards of experience and education, higher in fact than those required to qualify in New Jersey. To obtain a New York City license to act as a director of a bio-analytical laboratory, the applicant (a) must be a licensed physician, plus not less than four years' experience, § 13.07(a) (1); or (b) have a degree of doctor of public health or doctor of science or doctor of philosophy (in chemistry or biology), plus not less than four years' experience after graduation, § 13.07(a)(4); or (c) a degree of master of science or master of public health, or equivalent, plus not less than six years' experience, § 13.07(a)(5); or (d) a degree of bachelor of science or equivalent, plus not less than eight years' experience, § 13.07(a)(6). The experience must have been acquired after graduation. It must be general clinical laboratory training, of which at least two years were in the clinical laboratory of a hospital, university, or research institute acceptable to the department.
Having in mind the protection of the public health and the preservation of human life, which are the objectives of our law, we are satisfied that the absence of a written examination in New York is more than offset by its obviously superior *84 and extremely high educational and experience requirements. The public health of our citizens will not be jeopardized by our recognition, as "similarly" licensed, of those who obtain a director's license under New York City's Health Code, notwithstanding the absence of a written examination.
The State Board maintains that our State "has demonstrated the importance of examinations by making them a universal requirement for persons applying for a professional license." If the Legislature had wanted to limit recognition to those similarly licensed by written examination in the other state, it could have expressly so provided. See R.R. 1:20-2(b) as an example thereof.

(2) CLINICAL LABORATORIES
Section 13.05(c) of the New York City Health Code provides that "a clinical laboratory shall make only those tests that are within the classifications stated on its permit." Nine classifications are set forth. Thus, the New York permit may qualify a laboratory to perform only limited types of analysis. Defendant laboratory's permit is "to conduct a clinical laboratory for bacteriology  hematology  biochemistry  serology  clinical pathology." Our statute makes no provision for a limited license. N.J.S.A. 45:9-42.2(c) defines a bio-analytical laboratory as "any place, establishment or institution organized and operated primarily for the performance of chemical, microscopic, serological, parasitological, bacteriological or any other tests, by the practical application of one or more of the fundamental sciences, to material originating from the human body, for the purpose of obtaining scientific data which may be used as an aid to ascertain the state of health. * * *"
The State Board argues that our Legislature clearly intended that every laboratory must be able to perform all the tests set forth in N.J.S.A. 45:9-42.2(c), because the scope of our examination for a license as a bio-analytical laboratory director embraces such tests as are included in N.J.S.A. *85 45:9-42.2 (c). See N.J.S.A. 45:9-42.9. From this, it contends that a laboratory licensed to perform less than all the tests is not licensed "similarly" to one in New Jersey which may perform all.
It seems to us that this difference points up the greater stringency of the New York licensing regulation. The fact that the New York permit may be limited to less than all its designated classifications does not make the licensee any the less "similarly licensed" within the area of his authorization. Moreover, an examination of New York's nine classifications indicates that some are inclusive of others. For example, classification (5) covers "Serological tests for syphilis only," whereas classification (6) "Serology" is without limitation. So, too, classification (7) covers "Tissue pathology, other than exfoliative cytology," while classification (8) is "Exfoliative cytology." Thus, while defendants' laboratory seemingly is licensed under only the five designated titles noted above, there is no evidence in the record that it may not, under those broad and unlimited designations, perform all of the tests which a bio-analytical laboratory licensed under our law may conduct. On that assumption, it cannot be said that these defendants were not "similarly" licensed by the laws of the state in which their laboratory is located. Of course, the burden of proving defendants' guilt was on the State Board.

(3) QUALIFICATIONS FOR OWNERSHIP
The next point of difference is that the New York City Health Code, section 13.05b, provides that application for a permit shall be made by the owner and by the director of a clinical laboratory and, if they are not the same person, the permit shall be issued to them jointly. Under our statute, N.J.S.A. 45:9-42.2(b), licenses may issue only to laboratory directors. Since it is the license of the director which qualifies the laboratory for registration, the objective to be attained is not minimized by requiring ownership of the laboratory to be additionally specified, when ownership is in *86 someone other than the director. In fact, section 13.05b of the city health code provides that the owner and director "shall be jointly and severally responsible for the maintenance and operation of the laboratory and for any violations of the code."

(4) REVOCATION AND SUSPENSION
N.J.S.A. 45:9-42.13 specifically provides for the revocation or suspension of licenses for the causes specified therein. Section 22 of our own act specifically sets out the acts of unprofessional and unethical conduct which constitute one of the grounds for revocation or suspension. The New York City Health Code does not specifically list the grounds for revocation or suspension, or the specific acts which constitute unprofessional and unethical conduct. However, article 5, § 5.17 of the New York City Health Code provides:
"(a) The Board may suspend or revoke any permit for willful or continued violation of this Code or for such other reason as the Board determines is sufficient grounds for suspension or revocation.
(b) When, pursuant to this Code, a permit is issued by the Commissioner, he may suspend or revoke such permit for willful or continued violation of this Code or for such other reason as he determines is sufficient grounds for suspension or revocation."
See, too, sections 5.19 and 5.21, and section 561-4.0 of the Administrative Code of the City of New York which contain specifically counterparts of some of the prohibitions listed in our statute.
The difference between the generalization in the New York law, which is really far more embracing (see State Board of Medical Examiners v. Weiner, 68 N.J. Super. 468 (App. Div. 1961)), and the specifics in our own act, is not material and furnishes no rational basis for the conclusion that, by reason thereof, the bio-analytical laboratory licensed in New York is not "similarly licensed." Both the city code and our law provide for revocation or suspension of the license for good cause.

*87 (5) RECIPROCITY
The final difference is that N.J.S.A. 45:9-42.21 exempts from the necessity of obtaining a New Jersey license bio-analytical laboratories without this State under the direction of a licensed director similarly licensed by the law of that state, whereas the New York City Health Code does not contain such a reciprocal provision.
It is true, as the State Board points out, our Legislature could have omitted the "reciprocity provision" in N.J.S.A. 45:9-42.21. Duke v. Patten, 20 N.J. 42 (1955). It does have the authority to impose broad restrictions where the public health and preservation of human life are concerned. Taber v. State Board of Dentistry, 137 N.J.L. 161, 163 (E. & A. 1948), mandate conformed, 137 N.J.L. 392 (Sup. Ct. 1948), modified 1 N.J. 343 (1949), appeal dismissed 337 U.S. 922, 69 S.Ct. 1172, 93 L.Ed. 1730 (1949). However, the fact remains that our Legislature did not require a reciprocity provision, as it might have and sometimes does expressly. See, for example, R.S. 14:15-5, the reciprocity provision in our General Corporation Act; and N.J.S. 2A:26-2(e), dealing with attachments against foreign corporations authorized to do business in New Jersey.
It is also fair to assume that our Legislature was mindful of the desirability and need of supplementing our own licensed bio-analytical laboratories with those similarly licensed in our adjoining states, and particularly in New York City and Philadelphia. Hence, we find no materiality in the absence of a reciprocity provision in the New York law. Certainly, the absence of reciprocity does not make that law less stringent or less conducive to preserving the public health.

III.
In view of our conclusion that defendants' laboratory was similarly licensed and registered under the law of New York, where it is located, we find it unnecessary to consider *88 at length defendants' alternate argument that the language in N.J.S.A. 45:9-42.21 is without certainty and lacks definiteness and, for that reason, violates due process of law. Moreover, this question was not raised before the trial court. Suffice it to say that we find this contention to be without substantial merit.
The judgment is reversed.