722 P.2d 341

**CITY OF PHOENIX, a municipal corporation, Plaintiff-Appellant,**

v.

**MARATHON STEEL COMPANY, an Arizona corporation, Defendant-Appellee.**

**No. 1 CA–CIV 7363.**

Court of Appeals of Arizona, Division 1, Department D.

Nov. 7, 1985.

Review Denied July 8, 1986.

Roderick G. McDougall, City Atty. by Philip M. Haggerty, Janice Marquez Foley, Asst. City Attys., Phoenix, for plaintiff-appellant.

Snell & Wilmer by Robert C. Bates, Douglas W. Seitz, James P. Muehlberger, and Jennings, Strouss & Salmon by Ann M. Dumenil, Phoenix, for defendant-appellee.

## OPINION

OGG, Judge.

The City of Phoenix appeals a trial court judgment upholding an administrative hearing officer's ruling reducing a city privilege license tax assessment by the sum of $538,954.26. We affirm, and further grant appellee Marathon Steel Company's request for an award of attorneys' fees pursuant to Rule 25, Arizona Rules of Civil Appellate Procedure.

The City conducted a review of Marathon's sales of certain steel products to Arizona Public Service and the Salt River Project during the period from March 1, 1975 through May 31, 1978. As a result of that review, the City assessed an additional tax liability, including interest and penalties, in the amount of $586,312.62 through November 30, 1978. Pursuant to § 14–29 of the Phoenix City Code, Marathon filed a petition for redetermination of the assessment with the City Auditor.

The matter was tried before a hearing officer for the City Auditor's department on October 3, 1979. After hearing the evidence and considering written memoranda submitted by the parties, the hearing officer issued a lengthy determination letter on October 30, 1980 ruling that the sales at issue were exempt from the privilege license tax pursuant to former § 14–40(1) of the Phoenix City Code.[1] Although Marathon had advanced other bases for its petition for redetermination, the hearing officer did not consider them. On November 24, 1980, the City Treasurer issued a letter reducing the original assessment by $538,954.26 in accordance with the hearing officer's ruling.

The City thereafter commenced the instant action in superior court pursuant to § 14–19(f) of the Phoenix City Code. Both sides moved for summary judgment, having stipulated that the transcript of the administrative hearing would be used as the factual predicate on which the court would decide those motions, subject to supplementation by depositions, exhibits and affidavits if necessary.

---

1. Former § 14–40(1) of the Phoenix City Code exempts:

     sales of tangible personal property sold at retail by persons engaging or continuing in the business of manufacturing, processing, fabricating, modifying or assembling, providing the tangible personal property sold is not the same as or similar to tangible personal property being sold through distributors, jobbers, wholesalers, retailers or other persons than those substantially and principally engaging or continuing in the actual manufacturing, processing, fabricating, modifying or assembling thereof. . . .

The trial court's minute entry ruling stated in pertinent part:

THE COURT FINDS as a fact that the materials sold APS, PVNGS and SRP were not:

"the same as or similar to tangible personal property being sold through distributors, jobbers, wholesalers, retailers or other persons than those substantially and principally engaging or continuing in the actual manufacturing, processing, fabricating, modifying or assembling thereof. . . ."

The Court thus rules that Defendant is entitled to the exemption as provided in Section 14–40(1) to the Phoenix City Code for the sales to APS, PVNGS and SRP which form the basis of Plaintiff's Complaint herein.

IT IS, THEREFORE, ORDERED granting Defendant's Motion for Summary Judgment.

IT IS FURTHER ORDERED denying Plaintiff's Cross-Motion for Summary Judgment.

Formal judgment was entered in favor of Marathon on August 29, 1983 and this appeal followed.

The record reveals the following material facts. The sales by Marathon to APS comprised steel products for use in constructing the Palo Verde nuclear generating station and the coal-fired Cholla and Ocotillo generating stations. The steel products purchased for use at Palo Verde included steel reinforcing bar (rebar) and structural steel items like pipe supports, ladders, platforms, structural steel members, plate girders and polar crane rails.

Marathon did not act as a middleman with respect to any of these items. Instead, it fabricated each item from raw steel in accordance with the requirements of the drawings and specifications for Palo Verde. All these items were incorporated into the Palo Verde "power block", which comprises the containment, radwaste, control, diesel generator, auxiliary, fuel and turbine structural components of that portion of the plant which is designed to generate electricity. The fabricated steel products other than rebar were each designed to fit individually designated locations on a design drawing and an erection drawing. Each piece could generally fit only one place at the construction site. None of those pieces would have been available through distributors, jobbers, wholesalers or retailers, and there is no competition between Marathon and distributors, jobbers, wholesalers or retailers in the sale of that kind of steel product.

Marathon also produced the rebar used at Palo Verde. In doing so, Marathon did the engineering work, prepared detailed drawings, fabricated and finished the rebar according to the specifications and requirements for Palo Verde. The rebar incorporated into Palo Verde was required to meet Nuclear Regulatory Commission (NRC) standards relating to size, chemical composition, uniform quality and tracing requirements. Like the structural steel items Marathon sold for use at Palo Verde, rebar which met the NRC standards would have been unavailable from distributors, jobbers, wholesalers or retailers in Arizona. Businesses of that kind neither compete nor care to compete with manufacturers or fabricators in providing that kind of rebar.

The steel products APS bought from Marathon for the Cholla plant comprised steel tanks, flue gas ductwork and supports, and rebar used to reinforce the foundations necessary to support heavy pieces of generating equipment. Almost every piece of rebar used at Cholla was subjected to a specific bending schedule. The steel for the Ocotillo plant was used in an air preheater draining system. None of these steel products would have been available from a distributor, wholesaler or jobber. This type of steel would only have been sold by a fabricator. There is no competition between wholesalers, jobbers or distributors on the one hand, and fabricators on the other, for the placement of orders for such items.

The steel products SRP bought from Marathon for the Coronado generating station included rebar for structural support; breeching and ductwork; structural steel

for the rotary car dumper building, ash pipe supports, scrubber ductwork supports, and the coal silo bay; and fabricated steel for the sulphur dioxide scrubber reaction mix tanks. None of the fabricated steel was available from distributors, jobbers, wholesalers or retailers.

The rebar used in each of the generating stations was required to meet specifications relating to size, chemical composition, length and shape. All the rebar fabricated and sold by Marathon was No. 18, meaning that it was 18/8ths inches in diameter. It was undisputed that only a fabricator like Marathon would sell rebar of that size. Further, Marathon did not merely purvey the rebar but also subjected it to fabrication processes of various kinds, including cutting it to specified lengths and bending it into loops, stirrups and other shapes.

The trial court found that the steel in question was not the same as or similar to tangible personal property sold by distributors, jobbers, wholesalers or retailers. It accordingly ruled that the sales in question were exempt under former § 14–40(1) of the Phoenix City Code. The City challenges this ruling on appeal only as it applies to Marathon's sales of rebar. The City notes that the evidence tended to show that jobbers and distributors in the Phoenix area also sell rebar. Although the rebar Marathon sold APS and SRP was not "the same as" rebar handled by jobbers, distributors, wholesalers or retailers, the City argues that it was still rebar and thus was "similar" to it within the meaning of § 14–40(1). Other than its citation to *Ebasco Services, Inc. v. Arizona State Tax Comm'n*, 105 Ariz. 94, 459 P.2d 719 (1969), for the proposition that every interpretation is made against a tax exemption, the City cites no authority at all in support of its argument.

We note initially that despite the broad scope of its argument on appeal, the City's cross-motion for summary judgment in the trial court did not challenge the application of § 14–40(1) to Marathon's sales of rebar to APS for incorporation into the Cholla and Ocotillo plants or to SRP for incorpo-

ration into the Coronado plant. We accordingly consider the City's argument as applicable only to the rebar sold to APS for use at Palo Verde.

In *State Board of Medical Examiners v. Wagner*, 79 N.J.Super. 76, 190 A.2d 557 (1963), the court stated:

The word "similar" is generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness to some other thing, and not to mean identical in form and substance, although, in some cases "similar" may mean "identical" or "exactly alike."

79 N.J.Super. at 82, 190 A.2d at 560. Additionally, in *Guarantee Mutual Life Ins. Co. v. Harrison*, 358 S.W.2d 404 (Tex.Civ. App.1962), the court stated:

Webster's New International Dictionary (Second Edition) defines "similar" as "nearly corresponding; resembling in many respects; somewhat like; having a general likeness." It is a word with different meanings depending on the context in which it is used.

*Id.* at 406. The clear purpose of the "same as or similar to" exception to the tax exemption in former § 14–40(1) is to deny the exemption to manufacturers and fabricators for sales of goods they produce and sell in actual competition with distributors, jobbers, wholesalers and retailers.

The City's analysis entirely disregards the plain language of § 14–40(1) considered as an integrated unit, focusing instead on the uncontroversial proposition that one variety of steel rebar can be considered abstractly "similar" to any other variety of steel rebar merely because it is steel rebar. Superficial analysis of this kind, presented without citation even to secondary authority, is not helpful to the court and does not assist in advancing the rational interpretation of the law. Different kinds of finished goods cannot be deemed "similar" within the meaning of § 14–40(1) merely because they are fashioned out of materials that go by the same generic name. "Similarities" in the basic materials do not necessarily carry through

to the finished goods. Thus, skeins of rug-hooking yarn and cashmere sweaters could not be deemed "similar" merely because both were fabricated from wool. Similarly, copies of *Reader's Digest* could not be referred to as "similar" to volumes in A.L.R. 4th merely because both were printed on paper. In both cases the differences in the compared items are more important than their basic similarities in defining their characteristics as finished products.

■ The same reasoning applies here. Even though both the specially fabricated rebar produced for Palo Verde and the stock varieties of rebar handled by distributors, jobbers, wholesalers and retailers are made of steel and are referred to as rebar, their differences in quality, manufacture and use preclude their classification as "similar". Further, the City entirely overlooks the significance of the fact that unlike distributors, wholesalers, jobbers or retailers, Marathon bent, twisted, cut and otherwise processed its rebar in accordance with strict project requirements. What Marathon sold was not just rebar but rebar fabricated to specifications. *Cf. Japan Import Co. v. U.S.*, 86 F.2d 124 (Fed.Cir.1936) (goods were "similar" within the meaning of the U.S. Tariff Act if they were made of approximately the same materials, were commercially interchangeable, were adapted to substantially the same uses, and were ordinarily so used). The trial court did not err in holding that Marathon was entitled to the § 14–40(1) exemption for its sales of fabricated rebar to APS for use at Palo Verde. Because of our disposition of this appeal, we need not consider the parties' remaining contentions on the merits of the tax appeal.

In its answering brief, Marathon has requested an award of attorneys' fees under Rule 25, Arizona Rules of Civil Appellate Procedure. Rule 25 provides:

Where the appeal is frivolous or taken solely for the purpose of delay, or where a motion is frivolous or filed solely for

the purpose of delay, or where any party has been guilty of an unreasonable infraction of these rules, the appellate court may impose upon the offending attorneys or parties such reasonable penalties or damages (including contempts, withholding or imposing of costs, or imposing of attorney's fees) as the circumstances of the case and the discouragement of like conduct in the future may require.

In *Price v. Price*, 134 Ariz. 112, 654 P.2d 46 (App.1982), we stated that an appeal is frivolous

when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.

*Id.* 134 Ariz. at 114, 654 P.2d at 48, *quoting In re Marriage of Flaherty*, 31 Cal.3d 637, 183 Cal.Rptr. 508, 516, 646 P.2d 179, 187 (1982). The City has filed no brief in reply to any of the arguments advanced by Marathon in its answering brief.[2]

The issue of first impression raised here is whether Marathon Steel Company can recover the attorneys' fees incurred in this action from the City of Phoenix for a frivolous appeal.

In the recent case of *Lacer v. Navajo County*, 141 Ariz. 392, 687 P.2d 400 (App. 1984), this court held that a governmental agency can recover its attorneys' fees when it prevails in an action arising out of contract under A.R.S. § 12–341.01.

■ We can think of no valid reason why a private party or company which prevails on appeal cannot recover attorneys' fees for a frivolous appeal from a governmental agency under the proper circumstances. Such a governmental agency will usually have greater financial resources. If such a sanction is unavailable to private litigants, the use and meaning of Rule 25, Arizona

**2.** In 1984 A.R.S. § 12–348 was amended to authorize the award of fees against a city or town in specific instances.

Rules of Civil Appellate Procedure, would be reduced. A governmental agency could appeal any adverse ruling in favor of a private individual or company with impunity.

■ The present case qualifies as a frivolous appeal based upon the definitions set forth in Rule 25 and *Price, supra.* We accordingly award Marathon its attorneys' fees on appeal pursuant to Rule 25. Marathon is directed to file a statement of costs in compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure, and *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983).

We affirm the judgment of the trial court.

GRANT, P.J., and JACOBSON, J., concur.