920 A.2d 770

BRUCE PAPARONE, INC., EDWARD J. STURGIS AND SUSAN J. STURGIS, HUSBAND AND WIFE, PLAINTIFFS–RESPONDENTS, v. THE STATE OF NEW JERSEY, AGRICULTURE DEVELOPMENT COMMITTEE, DEFENDANT–APPELLANT, AND THE GLOUCESTER COUNTY AGRICULTURE DEVELOPMENT BOARD, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 28, 2007—Decided April 26, 2007.

Before Judges WEFING, PARKER and YANNOTTI.

*William A. Schnurr,* Deputy Attorney General, argued the cause for appellant (*Stuart Rabner,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Mr. Schnurr,* on the brief).

*S. David Brandt,* argued the cause for respondents (*Ballard Spahr Andrews & Ingersoll,* attorneys; *Mr. Brandt,* of counsel; *Robert S. Baranowski, Jr.,* on the brief).

The opinion of the court was delivered by

WEFING, P.J.A.D.

The State of New Jersey, through the State Agriculture Development Committee ("SADC" or "the Committee"), appeals from orders entered by the trial court granting plaintiffs' motion for summary judgment and denying its motion. Having reviewed the record in light of the contentions advanced on appeal, we reverse the grant of summary judgment to plaintiffs and remand the matter for further proceedings.

Plaintiffs Edward Sturgis and his wife Susan ("Sturgis") own a parcel of land approximately one hundred forty-one acres in size in South Harrison Township in Gloucester County which was used for agricultural purposes. In December 1997, pursuant to the Agriculture Retention and Development Act, *N.J.S.A.* 4:1C–11 to–48, Sturgis signed a Farmland Preservation Agreement with the Gloucester County Agriculture Development Board under which he agreed to retain that land in agricultural production for eight years.

The Agreement Sturgis signed was a standard one, prepared by the SADC to conform with the statutory requirements. Thus, it contained a provision that if Sturgis wished to sell the land during the eight-year period the preservation agreement was in effect, he would provide written notice to the Committee that he had executed a contract of sale and provide the Committee with a description of the contract's terms and conditions and a copy of the contract of sale. Upon such notification, the Committee would have the "first right and option to purchase the land upon substantially similar terms and conditions." *N.J.S.A.* 4:1C–39(a). The Agreement also provided that in the event Sturgis intended to subdivide the land, he would advise the Committee "prior to initiating such action." *N.J.A.C.* 2:76–3.12.

The Agreement was filed with the municipal tax assessor and recorded with the county clerk and constituted a restrictive covenant. *N.J.S.A.* 4:1C–24(a)(3). The Agreement was recorded with the Gloucester County Clerk on December 5, 1997, and would, by its terms, expire on December 5, 2005, unless extended by the parties. As a result of the execution of this Agreement, the Sturgis property was improved through the installation of an irrigation system paid for by a soil and water conservation grant of $25,114.46.

On November 25, 2003, approximately two years before the Farmland Preservation Agreement expired, Sturgis signed a contract to sell approximately one hundred twenty acres of the land to plaintiff Bruce Paparone, Inc. Paparone intended to remove the property from agricultural use and develop the property by constructing seventy-two single-family homes. The contract between Sturgis and Paparone provided that if Paparone obtained approval for seventy-two building lots, the purchase price would be $2,880,000, but the price would be adjusted upwards or downwards at the rate of $40,000 per approved building lot to reflect the actual number of lots for which approvals were eventually obtained. The contract further provided that in the event less than forty-nine building lots were approved, either party could cancel

the contract; Paparone, however, had the right to waive this condition and complete the transaction even if less than forty-nine building lots were ultimately approved.

Sturgis did not immediately notify the Committee of his contract with Paparone, who proceeded with the task of seeking the various land use approvals that were required for such a large development. Indeed Sturgis did not do so until March 1, 2005, when Edward Sturgis, in response to an inquiry from the Committee, provided it with a copy of the contract he and his wife had signed some two years earlier. Further, despite the contractual obligation contained within the Farmland Preservation Agreement to notify the Committee before proceeding with a subdivision application, the March 1, 2005, letter did not advise SADC that the matter was then pending before the South Harrison Township Planning/Zoning Board. In fact, the matter was heard by the Board in April and May 2005, and in July 2005 the Board passed a resolution granting preliminary major subdivision approval for seventy-two building lots.

By letter dated April 6, 2005, before completion of the hearings before the Board, the Committee notified Sturgis that it intended to exercise its first right and option to purchase the property. Its letter noted that under *N.J.S.A.* 4:1C–39, it had until June 5, 2005, to submit an offer.

By letter dated June 2, 2005, the SADC conveyed its offer. Its letter stated in pertinent part:

The SADC is prepared to make you an offer of $19,000 per acre for the fee simple acquisition of the above property. If the certified fee simple fair market value is greater than $19,000 an acre, the SADC will pay the certified fair market value. If the certified value is less than $19,000 per acre, you are under no obligation to continue with the transaction.

The offer is contingent upon you signing an Agreement For Purchase with the SADC and the SADC's certification of the property's fair market value at a minimum of $19,000 per acre.

Your written acceptance of this offer will trigger the preparation of the Agreement For Purchase. The Agreement will be submitted to you for execution. Once the Agreement is executed the SADC will hire two independent appraisers to appraise

the property. The SADC will review the appraisals and determine a certified fee simple fair market value.

This offer translated into a base purchase price of at least $2,280,000. Sturgis responded by letter dated June 24, 2005, that the offer of the SADC was rejected because it did not match the terms and conditions of the contract of sale with Paparone.

Several months later, in October 2005, Sturgis and Paparone filed a declaratory judgment action, seeking judgment that the offer submitted by the SADC did not match the contract between the plaintiffs, that Sturgis was not obligated to accept it and could proceed to close under the March 2003 contract of sale with Paparone. The Committee filed an answer and counterclaim, seeking judgment that its offer was substantially similar to the terms of the contract of sale and that Sturgis could accept the Committee's offer without breaching the contract with Paparone.

The matter was presented to the court on cross-motions for summary judgment. On the initial return date of these motions, the SADC had not yet received the report of the expert it had retained to analyze and compare the economic value of these competing offers, and the trial court continued the matter for several weeks to permit the SADC to submit this report.

The SADC did not have the report, however, by the adjourned date, April 28, 2006. The SADC had retained a certified public accountant to prepare this report, but he was unable to complete it within the timeframe set by the trial court because it overlapped with the heavy workload generated by the intervening deadline of April 15 to complete and file tax returns for the firm's clients. The expert estimated that after taking a brief vacation following the tax deadline, he would have the report completed by the end of May. The State had requested the matter be adjourned to permit it to submit this report, but the trial court declined to do so. After hearing further argument, it granted plaintiffs' motion for summary judgment and denied the State's. This appeal resulted.

In support of its decision, the trial court essentially stated two reasons: that the structure of the statute envisioned a prompt response by the State so that the property owner would not be unreasonably delayed in being able to make a decision as to which offer to accept and that the statute did not provide for the State to make its offer conditional upon receiving appraisals of the property's fair market value. In our judgment, these reasons do not support the grant of summary judgment to plaintiffs in the context of this case.

In support of its first position, the trial court stressed this language in the statute:

If the committee chooses to exercise the first right and option, the committee shall give notice of that intent to the landowner within a period of 30 days following the date of receipt of the notice of executed contract of sale. The committee shall submit its offer to match the terms and conditions of the executed contract of sale to the landowner within the 60 days following the expiration of the 30-day period. [*N.J.S.A.* 4:1C-39(a).]

The trial court noted that the contract of sale had been executed in March 2003 and that a year had passed since Sturgis notified the SADC of the contract and, yet, he still had not received what the trial court considered an unconditional offer to purchase the land at a fixed price. As the trial court phrased it, "[T]he statute is designed to give the private property owner a quick ability to decide what he wants to do with his life and his property."

While we agree with the trial court that the statute envisioned a prompt resolution of the question whether the SADC properly exercised its first right and option, we are unable to agree that in the context of this matter the SADC acted in a manner so as to frustrate that purpose and thus lost its first right and option. While it is true that the SADC did not produce the report of its economic expert within the original deadline, the explanation offered, the press of tax preparation and filing, was entirely reasonable, as was the length of the requested extension. There is no indication in this record that the SADC was acting to drag out the resolution of this matter. It cannot escape our notice, moreover, that the initial delay occurred because Sturgis did not

notify the SADC of his contract until two years had passed. Once the SADC received that notice, it acted within the 30–day and 60–day timeframes created by the statute.

The trial court did not appear to attach great significance to this two-year delay on the part of Sturgis. It noted, for example, that the statute did not impose an obligation to notify the SADC immediately upon execution of the contract. While it is true that *N.J.S.A.* 4:1C–39(a) does not state when the landowner is to notify the SADC that he has executed a contract of sale, the only reasonable interpretation of the statute, in our judgment, is that the landowner is to notify the SADC promptly upon execution of the contract.

Recognizing that "words are inexact tools at best," *Bd. of Chosen Freeholders v. State,* 159 *N.J.* 565, 579, 732 *A.*2d 1053 (1999), certain principles have evolved with respect to the task confronting a court called upon to interpret the language selected by the Legislature.

When a statute is subject to more than one plausible reading, our role is to effectuate the legislative intent in light of the language used and the objects sought to be achieved. In the end, our interpretation will not turn on literalisms but on the breadth of the objectives of the legislation and the commonsense of the situation.

*[U.S. Sportmen's Alliance Found. v. N.J. Dep't of Envtl., Prot.,* 182 *N.J.* 461, 469, 867 *A.*2d 1147 (2005) (internal citations omitted).]

"Above all, [a court] must seek to effectuate the 'fundamental purpose for which the legislation was enacted.'" *Musikoff v. Jay Parrino's The Mint, L.L.C.,* 172 *N.J.* 133, 140, 796 *A.*2d 866 (2002) (quoting *Twp. of Pennsauken v. Schad,* 160 *N.J.* 156, 170, 733 *A.*2d 1159 (1999)).

We recognize that as originally passed, before it was amended by the Legislature, the bill stated "A landowner ... shall give to the committee no less than 60 days prior written notice, by certified mail, of the terms and conditions of the proposed sale." *L.* 1989, *c.* 28, § 2. This was subsequently changed to provide, "A landowner ... shall give to the committee written notice, by certified mail, that a contract of sale has been executed for the

property." *L.* 1989, *c.* 310, § 7. This language, of course, omits the reference to notification within 60 days.

We consider it significant, however, that the statute as enacted called for notification upon execution of a contract of sale, as opposed to the earlier reference to a "proposed sale." It is only upon execution of a definite contract of sale that the SADC would be in position to decide if it wished to make an offer that is "substantially similar." Because of the uncertainty of what constitutes a "proposed sale" the 60–day timeframe was appropriate. It was no longer necessary, however, when the Legislature adopted a precise trigger, execution of a contract of sale.

Several factors inform our analysis and conclusion that Sturgis was obligated to notify the SADC promptly upon executing the contract with Paparone. If we were to construe the statute so as to conclude that a person signing a Farmland Preservation Agreement does not have to notify the SADC of a subsequent contract for sale upon execution of the contract, it would invite the expenditure of needless money, time and energy. According to the argument before the trial court, for example, Paparone had by that point spent approximately two hundred thousand dollars in preparing and prosecuting the various land use applications required by the proposed development. If Sturgis had promptly notified the SADC that he had executed this contract of sale, that expenditure of funds could have been entirely avoided. Courts should strive to avoid a statutory interpretation that leads to unreasonable results. *State v. Lewis,* 185 *N.J.* 363, 369, 886 *A.*2d 643 (2005); *Asbury Park Press v. Ocean County Prosecutor's Office,* 374 *N.J.Super.* 312, 326, 864 *A.*2d 446 (Law Div.2004). It does not serve any sound purpose to interpret the statute in such a manner as to create that possibility.

Further, the Legislature's goal in enacting the Agriculture Retention and Development Act was to provide a means for the SADC to purchase land to keep it as farmland. It would be contrary to this goal to have the prospective purchaser or the landowner go through the effort of obtaining permission to subdi-

vide and develop the land before giving the SADC an opportunity to exercise its first right and option.

Nor are we able to agree that the State's offer could fairly be termed conditional. The State was offering to purchase this tract of land for at least two million, two hundred eighty thousand dollars. It agreed that if its appraisals reflected a higher fair market value, it would pay that higher sum. It also agreed that if its appraisals reflected a lower fair market value for the property, Sturgis was free to proceed with his contract with Paparone. The offer submitted by the SADC was, in our view, no more conditional than was the Paparone contract at its execution for there was no certainty as to the number of building lots that would be ultimately approved. If, for example, only forty-nine building lots were approved, which the contract recognized as a possibility, the purchase price would sink to one million, nine hundred sixty thousand.

The trial court stressed that *N.J.S.A.* 4:1C–39 makes no provision for the State to obtain appraisals of the land in question. Just as with the fact that the statute is silent as to when the SADC is to be notified of a contract for sale, we do not consider the statute's silence with regard to appraisals to be determinative. Any purchase of farmland by the SADC is made with public funds, and the SADC is, in our judgment, obligated to ensure that it spends those funds wisely and exercises sound judgment in doing so. Indeed, if the SADC were not able to obtain appraisals to determine the fair market value, the process would be subject to collusion and chicanery.

The critical issue, which could not be resolved without production of the State's economic analysis, was whether the State's offer to purchase the Sturgis land was "substantially similar" to or "matched" Paparone's offer. *N.J.S.A.* 4:1C–39(a) uses both terms in describing an offer to be submitted by the SADC. Before proceeding to that question, however, we must consider the effect, if any, of the Legislature's use of the terms "substantially similar" and "match" to describe the offer to be made by the SADC.

"Match" has been defined as "To be exactly like: correspond precisely." *Webster's II New College Dictionary* 674 (2001). This is clearly not the same as "substantially similar" which, by its very terms, permits some differences. *State Bd. of Med. Exam. v. Wagner*, 79 *N.J.Super.* 76, 82, 190 *A.*2d 557 (App.Div.1963) (noting that "In using the word 'similar' in a statute, 'There is an implied allowance for some degree of difference.'") (quoting *Pine Grove Manor v. Director, Div. of Taxation*, 68 *N.J.Super.* 135, 142, 171 *A.*2d 676 (App.Div.1961)).

The legislative history is silent as to whether the Legislature intended to draw a critical distinction between these two terms when it passed this statute. We, therefore, look to the common-sense of the situation. *U.S. Sportsmen's, supra,* 182 *N.J.* at 469, 867 *A.*2d 1147. In our judgment, the Legislature did not intend to require that the SADC "match" the terms and conditions of the contract of sale in order to exercise its first right and option. For the SADC to do so in this situation, for example, would require that it seek subdivision approvals for the land. That, however, would be completely antithetical to the SADC's purpose to retain this land as farmland and prevent its diversion to other, more concentrated uses. We construe the legislation to mean that the SADC, to validly exercise its first right and option, must submit an offer that is equivalent in value to the contract the landowner has executed.

█ The first step in analyzing whether the SADC offer of $2,280,000 is substantially similar or equivalent in value to Paparone's offer of $2,880,000 is determining the proper standard by which to measure the offers; that is, must the SADC offer be equivalent in value to the Paparone contract as of the time it was executed or equivalent in value to the Paparone contract as of the time the summary judgment motion was granted. We have already set forth our conclusion that Sturgis was obligated to notify the SADC promptly that he had executed a contract of sale with Paparone. Logically, then, the question presented to the trial court was whether the SADC's offer was substantially equiva-

lent in value to the Paparone contract as of the date it was executed. To measure the SADC offer against the value of the contract after preliminary major subdivision approval had been obtained could have the effect of rewarding Sturgis for his delay.

The trial court also indicated that the SADC's offer was deficient because it did not demonstrate at the time it was submitted that its offer "matched" that of Paparone. There is nothing within the statute which would impose such an obligation upon the SADC, and we can perceive no basis for doing so.

One portion of the statute provides:

A landowner may elect to convey the land to the committee upon the exercise of the committee's first right and option to purchase without breaching the original contract of sale, notwithstanding that the committee's offer is different than, or provides for lower consideration than, that in the original executed contract of sale.

[*N.J.S.A.* 4:1C–39(a).]

To interpret the statute in such a manner as to require the SADC to prove its offer was a match at the time of its offer would make this section of the statute irrelevant.

Based upon our review of this record, we are satisfied that the trial court was presented with a material question of fact as to whether the offer of the SADC was equivalent in value to the Paparone contract, valued as of the date that contract was executed. We are further satisfied that the SADC should have been granted the brief adjournment it requested in order to submit to the trial court its expert's report as to equivalency in value. We, therefore, reverse the order of the trial court granting summary judgment to plaintiffs and remand this matter to the trial court for further proceedings. We do not retain jurisdiction.

Reversed and remanded.