REPUBLIC FACTORS, INC., A NEW YORK CORPORATION, PLAINTIFF-RESPONDENT, v. CARTERET WORK UNIFORMS, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.

COASTAL COMMERCIAL CORPORATION, A NEW YORK CORPORATION, CLAIMANT-APPELLANT, v. HYMAN D. LEHRICH, CREDITOR-RESPONDENT.

Argued June 10, 1957—Decided June 24, 1957.

526

*Mr. James E. Masterson* argued the cause for the appellant Coastal Commercial Corporation (*Messrs. Kleinberg, Moroney & Masterson,* attorneys).

*Mr. Maurice Schapira* argued the cause for the respondent Hyman D. Lehrich (*Messrs. Schapira and Farkas,* attorneys).

The opinion of the court was delivered by

HEHER, J. The issue joined here concerns an attorney's contractual right to compensation for professional services in realizing a creditor's intangible security given by an insolvent corporation.

March 6, 1952, the respondent Lehrich, an attorney-at-law of the State of New York, was engaged by the defendant Carteret Work Uniforms to prosecute in its behalf a claim for breach of contract against the United States before the Armed Services Board of Contract Appeals; and Carteret

agreed to pay him for the service a retainer of $1,500 (reduced to $1,000, one week later) and 20% of the recovery. Lehrich performed the undertaking; and the result was a determination by the Board, July 25, 1952, that the United States had breached its contract with Carteret (for the manufacture of overcoats) made March 19, 1951 and Carteret was entitled to damages. There was a reference to the New York Quartermaster Procurement Agency for an assessment of the damages; and the finding there was that Carteret had sustained no actual monetary loss, even though there had been a "technical breach" of the contract. An appeal from this determination was taken to the Armed Services Board; and the Board awarded damages of $22,441.86, August 20, 1954.

Meanwhile, August 19, 1952, Coastal Commercial Corporation loaned Carteret $10,000, evidenced by a promissory note providing for the payment of interest thereon at 2% per month and counsel fees "of up to 15% in the event that the claim was placed with an attorney for collection," and secured by an assignment of Carteret's action for damages against the United States. The plaintiff here, Republic Factors, Inc., recovered a judgment against Carteret; and a receiver of Carteret's assets was appointed June 23, 1953 under *R. S.* 14:14–3.

August 24, 1953, Carteret's receiver petitioned for an order authorizing him to retain the respondent Lehrich for the prosecution of Carteret's claim against the United States before the Armed Services Board; and an *ex parte* order was made forthwith permitting the receiver to retain Lehrich to that end "under the agreement" that Lehrich's "fees * * * shall be 20% of the amount recovered thereby, but not in excess of $6,500," and that the attorney for the receiver, Leo Yanoff, "shall be named as co-counsel in said appeal."

December 30, 1954, Carteret's receiver presented a petition in the cause reciting the making of the award and the receiver's agreement with Lehrich made August 24, 1953, according to the authority thus given, and alleging that the receiver had been advised by the Philadelphia Quartermaster

Depot, United States Army, of the assignment of the claim against the United States to secure the stated loan and the procedure for the adjustment of the "conflicting claims of Receiver and Coastal"; that the receiver had questioned the validity of the assignment "under 31 *U. S. C., section* 203"; that Coastal "claims interest on [the] loan of approximately 57%," "which makes the claim of Coastal against said fund approximately $15,700," plus an additional sum for counsel fees under the terms of the note; that by the order entered in the cause, Lehrich is entitled to counsel fees of $4,488.37, 20% of the recovery, and "If the said sums were paid, the interest of the receiver in [the] fund of $22,441.86" would be $2,253.49 (*sic*); that the receiver and Coastal had negotiated a settlement of the "controversy between them respecting the validity of [the] assignment," whereby the receiver would receive $4,703.49, an agreement in writing made December 23, 1954, subject to the approval of the court; and praying that the contract be approved on notice to the creditors, stockholders and officers of Carteret.

A rule to show cause was allowed; and an order was entered March 7, 1955 approving the contract and authorizing performance by the receiver.

September 28, 1956, Coastal gave notice of a motion to vacate the order of March 7, 1955, approving the agreement of December 23, 1954 between the receiver and Coastal, on the ground that although the amount which would have remained for Coastal under that agreement "was substantially less than the claim it asserted as assignee," and it entered into the agreement "solely to expedite payment of the award and disposition of the pending dispute," the United States had refused payment of the "full amount of the award to Coastal because it asserted offsets against the same" for unpaid taxes owing by Carteret to the Government, the contention of the Government being that although it could not offset such taxes against Coastal "by reason of the provisions of the Assignment of Claims Act, 31 *U. S. C. A.* 203," it could "withhold all moneys which Coastal was committed, under the order, to pay to the Receiver or to" Lehrich, and

that Coastal had received from the Government "only $13,250 which it accepted and retained under appropriate protest and without prejudice to its rights to pursue the balance of the award," and the "balance, if collected, would not be sufficient to pay, in full, the remainder of Coastal's claims and the amount claimed by Lehrich," and "In order to eliminate the problems which arose from the entry of the Court's order upon the said agreement," it was "requested" that the order be vacated, thus eliminating, it was said, "to that extent, the alleged defense of the Government against payment to Coastal." And it was suggested that this course would "not result in any loss, damage or injury to the Receiver or the defendant since neither of them could recover any part of said award from the Government in any event," and the "existence of the said order merely penalizes Coastal for the fact that it was willing to waive a portion of its claim in order to satisfy the demands of the Receiver, which it had disputed from the beginning."

The receiver interposed a petition and answer referring to the recital in the contract that he, as receiver, disputed the validity of the assignment to Coastal and the contract was made "for the purpose of settling the dispute," and alleging that "from the course of events" it is "apparent" that Coastal "negotiated with the Governmental authorities for payment to it of $13,500 without regard to the interest of the receiver in the fund and without giving receiver an opportunity to protect his interest therein," and the sum was "collected" by Coastal "without the knowledge of receiver," and praying that the motion to vacate the order be denied and that Coastal be directed to pay to the receiver "the same proportion of $13,500 as $4,703.49 bore to $22,441.86, on the ground that it was the intention of the parties by the contract approved by the Court that the fund received from the Government be divided in those proportions."

And the respondent Lehrich moved for a revision of the order of March 7, 1955 to direct Coastal to pay to him $4,488.37, as provided in that order, "out of $13,500" re-

 ██

ceived by Coastal from the Government or, in the alternative, to pay to him "the same proportion of $13,500 as $4,488.37 bore to $22,441.86," and "20% of any amounts received by it subsequent to the date of [the] order on account of the aforesaid award of $22,441.86."

Coastal submitted a supplementary affidavit made by its president to this effect: Coastal received $13,250 from the Government "on or about January 1, 1956," and there is "therefore due an additional $3,950 and interest, it having taken three years for them to collect the moneys due it," and "In addition, there is $1,500 due to Coastal on attorney's fees for the eventual collection of the $10,000;" Coastal did not "negotiate with the Government for any sum less than $22,441.86, as the original agreement provided for Coastal to receive those moneys"; and Coastal "at no time negotiated" with the Government's General Accounting Office "in reference to the rights of the Receiver or Lehrich."

Thus, the Government turned over $13,250 to Coastal, the amount provided for it by the agreement, and retained the remainder of the fund as a set-off against the unpaid taxes, leaving nothing for the receiver or the respondent Lehrich.

Judge Sullivan denied Coastal's motion to set aside the settlement, for the avowed purpose of an additional recovery on its assignment from the Government on the assumption that the Government's claims against the insolvent debtor could not be set off against it: this on the ground that "in the absence of [Coastal's] offering to deposit the money it has received under the contract into court, it does not come here in complete good faith"; "If it seeks equity, it must do equity"; and "The Court will not give its application serious consideration and, in fact, will not pass on the merits of the situation because it has not established a proper basis for making it, and that is by tendering the money into court, subject to whatever valid liens it may have against that fund."

Refusing to pass upon the respondent Lehrich's "claim of lien on this fund," at issue in a legal proceeding pending

in New York, it was found that since the attorney "was retained by order of this court under an agreement to pay him 20% of whatever moneys were realized," and that "at least $13,250 has been realized as a result of this attorney's efforts" and was paid to Coastal "pursuant to an order" of the Superior Court, "and to that extent" the court had "some control over those moneys," there should be an order directing Coastal to pay to Lehrich "as counsel fee" the sum of $2,650, or 20% of the amount received by Coastal, this sum to "be paid to him without prejudicing any rights he may have to prosecute any action now pending for fees for legal services rendered."

The receiver's petition for an order directing Coastal to pay to him "a share of the funds received by it" was denied.

Coastal appealed to the Appellate Division of the Superior Court from the denial of its motion to vacate the order of March 7, 1955, and the direction to pay the given sum to Lehrich "as a counsel fee"; and the case is here by our certification of the appeal, *sua sponte*.

The motion to vacate the order of March 7, 1955 is made under *R. R.* 4:62–2, providing that the court may relieve a party from a final judgment, order or proceeding if (e) it is no longer equitable that the judgment or order should have prospective application, or (f) there is any other reason justifying relief from the operation of the judgment or order.

The specific point made is that the Government refused to make payment of the full award because of offsets against the fund for unpaid taxes due from Carteret, on the hypothesis that "it was entitled to withhold all moneys which Coastal was required under" the order of March 7, 1955 "to pay to the receiver or to Lehrich"; the "amount due for unpaid taxes was in excess of any sum which could have been recovered by the receiver either under the settlement agreement or otherwise"; the "sum still due Coastal on its loan is substantial"; under the contract Coastal's obligation was "to pay the receiver and Lehrich sums collected on the award by Coastal in excess of $13,250, a contingency which has never occurred"; the contract, "as

approved by said order, contemplated only the receipt by Coastal of $22,441.86, and no other amount," and the "three claimants to the fund predicated their assertion, or surrender (in case of Coastal) of their respective claims with reference to the total award as expressed in the contract"; and so, it is said in argument, "the subject matter of the agreement was impaired through no fault of the parties," and "it would be inequitable to continue to enforce a term of the contract, to wit, to limit the extent of Coastal's interest in the fund to the total sum of $13,250, which limitation originally represented a surrender by Coastal of substantial rights found to exist by the court."

The principle invoked is that "whenever a contract required for its performance the existence of a specific thing, the fortuitous destruction of that thing, or such impairment of it as makes it unavailable excuses the promisor, unless he has clearly assumed the risk," citing *Williston on Contracts* (*rev. ed.*) *section* 1948, and *Restatement, Contracts, section* 460.

It is also urged that Coastal's "first participation in these proceedings occurred when it entered into the contract with the receiver to which Lehrich was a beneficiary, not a party," when the "award of $22,441.86 had already been obtained (although the record does not establish to what extent the efforts of Lehrich, since his appointment as co-attorney, contributed to said result)"; the efforts of Lehrich "were not exerted for the benefit of the three persons referred to in the contract, because at that time no contract existed and Coastal had not entered these proceedings," and "presumably, Lehrich acted for his client, the receiver"; the record discloses only that the amount of the tax "was at least $8,000," and it may well have been "in an amount that would have prevented the receiver and his counsel from receiving any part of $22,441.86, even had Coastal not held an assignment thereof."

But all this evinces a fundamental misconception of the settlement agreement and the relations of the parties, each to the other. Coastal was not thereby assured at all events

of the payment of $13,250. Carteret's retainer agreement with Lehrich, providing for a fee of 20% of the recovery, was made prior to the assignment of the claim to Coastal; when the assignment was made, August 19, 1952, the Armed Services Board had made the determination of a breach of contract, July 25, 1952. And by the receiver's agreement with Lehrich of August 24, 1953, approved by the order of March 7, 1955, which Coastal would now set aside as involving a "specific thing" fortuitously destroyed or so impaired as to make it "unavailable," the promise to pay Lehrich 20% of the recovery was renewed; and it cannot now be said that it would be "inequitable" to limit Coastal's "interest in the fund" by the payment to Lehrich of 20% of the recovery by Coastal in compensation for his services to that extent. To the contrary, it would be inequitable to deprive him of the fee earned for a service of which Coastal was the beneficiary.

██ A special or charging lien attached to the fund in favor of Lehrich for his services in procuring the award, a right recognized at common law as rooted in equitable considerations, although not a lien in the true sense of a right resting in the possession, actual or constructive, of the thing upon which it operates. *Norrell v. Chasan,* 125 *N. J. Eq.* 230 (*E. & A.* 1939). As there noted, Baron Parke termed it "merely a claim to the equitable interference of the court to have that judgment held as security" for the attorney's "debt." *Barker v. St. Quintin,* 12 *Mees. & W.* 441; 152 *Eng. Rep.* 1270 (1844). Chief Justice Cockburn described it as "only a claim of right to ask for the intervention of the court" for the attorney's "protection, when, having obtained judgment for his client, there is a probability of the client depriving him of his costs." *Mercer v. Graves,* L. R., 7 Q. B. 499 (1872). It is a judicial device to protect the attorney's rights where he has been unable to get possession; to this end the attorney is considered an equitable assignee of the judgment to the extent of his debt. *Bozon v. Bolland,* 4 *Myl. & C.* 354 (1839); *Weed Sewing Machine Co. v. Boutelle,* 56 *Vt.* 570 (*Sup. Ct.* 1884); *Marshall v.*

*Meech,* 51 *N. Y.* 140 *(Comm. App.* 1872). See also *Kristeller v. First National Bank of Jersey City,* 119 *N. J. L.* 570 *(E. & A.* 1938). And there is no countervailing equity in favor of Coastal, none whatever.

Coastal was fully informed of the circumstances; it concedes that its contract with the receiver "contained a provision beneficial for Lehrich distinct from that of the Receiver"; and a third-party creditor beneficiary may have enforceable rights created by a contract, even though he is not the sole person to be benefited by performance. *Corbin on Contracts, sections* 774 *et seq.,* 786 *et seq.* Coastal knew at the time of the receiver's retainer of Lehrich under the approval and direction of the court to enforce the claim for damages; it acquiesced in the service, and it cannot now accept the benefits of the contract and then renounce the correlative burden of compensation for the work done or duty well performed. The judicially-approved "settlement" agreement of December 23, 1954 between Coastal and the receiver suggests a recognition of Coastal's obligation in this regard; it is therein recited that "by virtue of the order of the Superior Court," dated August 24, 1953, Lehrich, "an attorney of the State of New York, is entitled to 20% of the said sum of $22,441.86 or the sum of $4,488.37," and provision was made for its disbursement accordingly.

And there can be no doubt of jurisdiction over Coastal to determine the issue here. See *Korff v. G. & G. Corporation,* 21 *N. J.* 558 (1956). Coastal entered an appearance in this proceeding, first to defend its assignment, and then to have the order of March 7, 1955 vacated; and it thereby submitted to the jurisdiction of the Superior Court in relation to the subject matter of this proceeding.

Affirmed.

*For affirmance*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—None.