**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2151-24

LAW OFFICES OF PETER W.
TILL,

    Plaintiff-Appellant,

v.

PEDRO ORTIZ,

    Defendant-Respondent.

_____

Submitted December 9, 2025 – Decided December 24, 2025

Before Judges Gilson and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-4074-24.

Law Offices of Peter W. Till, self-represented appellant (John V. Salierno, on the brief).

Respondent has not filed a brief.

PER CURIAM

    Plaintiff the Law Offices of Peter W. Till appeals from the March 18, 2025 trial court order denying its application to execute its attorney's charging lien

pursuant to the Attorney's Lien Act (the Act), N.J.S.A. 2A:13-5, against defendant Pedro Ortiz's funds that plaintiff held in its trust account. After reviewing the record, parties' arguments, and applicable law, we affirm.

I.

We summarize the relevant facts from the record. In June 2020, defendant retained plaintiff to represent him in a federal criminal action, United States of America v. Pedro Ortiz, in the United States District Court of New Jersey (the federal action). The parties entered a retainer agreement memorializing plaintiff's representation. Pursuant to the retainer agreement, defendant initially paid plaintiff $35,000, which was "credited toward costs incurred." During the criminal investigation, defendant's property, including electronic equipment, and $38,020, was seized.

In the federal action, plaintiff filed a motion for defendant to suppress evidence. According to plaintiff's billing records, on October 28, plaintiff had an in-person conference with a United States Department of Homeland Security special agent regarding the "return of [defendant's] personal items." In July 2021, because defendant was unable to afford to pay for legal services, plaintiff was appointed to continue representation under the Criminal Justice Act, 18

U.S.C. § 3006A. Thereafter, on November 1, 2022, the United States dismissed defendant's charges but did not return his property.

In December 2022, defendant moved before the federal district court (federal court) to have his money and items returned. After defendant allegedly received no decision regarding his property, he contacted the federal court regarding the status of his motion. In June 2023, defendant maintains he received a call from Peter Till, a member of plaintiff, advising that he should contact the United States Attorney's Office to ascertain whether they objected or would enter a consent order to return the property. Defendant allegedly told Till he wanted all his property back.

In August 2024, plaintiff mailed defendant a "Pre-Action Notice" pursuant to Rule 1:20A-6, demanding $39,710.29 in attorney's fees owed and advising him of his right to elect fee arbitration. Defendant did not elect fee arbitration.

Thereafter, for reasons that are not entirely clear, plaintiff moved before the federal court for the release of defendant's funds to its trust account and personal items but never advised defendant or received his consent. On September 27, 2024, the federal court executed a consent order entered between plaintiff, the United States Attorney's Office, and the United States Department of Homeland Security that stated plaintiff would receive possession of

3

defendant's "computer equipment," "passport, Apple iPhone," and $37,020 "in cash."[1]

On November 4, 2024, plaintiff filed a complaint against defendant for breach of contract and unjust enrichment, claiming $39,710.29 was owed for its legal services rendered in the federal action. In December 2024, defendant filed an answer.

Plaintiff later moved for summary judgment seeking an award of attorney's fees and court costs against defendant. Defendant opposed the motion, requested the return of his money, and argued that plaintiff wrongfully obtained his funds. He questioned whether plaintiff appropriately moved before the federal court for the funds and the validity of plaintiff's contention that the government was unable to communicate with him directly since he resided at the same address for fourteen years. Plaintiff conceded it had not advised the court that it obtained defendant's seized funds pursuant to the federal court's consent order.

On February 25, 2025, the court issued an order accompanied by a cogent written statement of reasons partially granting plaintiff's motion. The court

---

[1] We note the consent order states, "Thirty-Seven Thousand Twenty Dollars ($37,020) in cash . . . made payable to Law Offices of Peter W. Till, Attorney Trust Account" but it is undisputed plaintiff received a check for $38,020.

found defendant had breached the parties' retainer agreement and owed plaintiff attorney's fees, but it denied summary judgment on plaintiff's unjust enrichment claim. Plaintiff later voluntarily dismissed the unjust enrichment claim.

Plaintiff apparently never filed a new motion requesting the attorney's fees but instead submitted a proposed order for final judgment, which included that the court award attorney's fees of $39,710.29 plus costs and release under the Act defendant's $38,020 that plaintiff held in its trust account. Defendant opposed plaintiff's request, arguing "plaintiff did not contribute" to the recovery of his personal property and the remaining balance owed was $4,700. Plaintiff asserted "defendant [was informed] via email on October 24, 2024, that [it] had taken custody of the funds at the request of the Department of Homeland Security because Department Agents had been unable to make contact with defendant." "Defendant refute[d] that any Homeland Security Agents ever reached out to him."

On March 18, 2025, the court issued an order accompanied by a written decision awarding plaintiff $40,010.29 in attorney's fees and costs. The court also required plaintiff to remove its attorney's lien over defendant's funds held in its trust account, noting the Act "is rooted in equitable considerations, and its enforcement is within the equitable jurisdiction of the courts." It found "plaintiff

ha[d] improperly asserted an attorney's lien over defendant's illegally seized funds" and that "[t]he check . . . held in plaintiff's attorney trust account represents money that defendant possessed at the time of the illegal search and seizure of his home." The court ordered plaintiff to disburse the funds to defendant within five business days from the entry of the order, reasoning that the seized money was not "contemplated in the federal district court's 'decision, award, judgment[,] or final order in [defendant's] favor.'"

After filing this appeal, plaintiff filed an order to show cause (OTSC) seeking the court to stay its March 18 order. Specifically, plaintiff wanted the court to stay the removal of its attorney's lien against defendant's $38,020 and requirement that defendant's funds be returned. Alternatively, plaintiff requested the funds be deposited in court. The court heard argument two days later and denied the OTSC, finding no "likelihood of success on the merits." The court ordered a limited two-day stay to provide plaintiff time to file an emergent appeal.

During the OTSC argument, John Salierno, Esq., a member of plaintiff, acknowledged defendant's funds "were returned to the Law Office of Peter Till upon motion by [his] office to . . . the federal district court" seeking the return of defendant's property. Further, Salierno could not confirm that the consent

6

order was entered with defendant's knowledge and acknowledged that plaintiff applied to receive defendant's personal items "and a check made payable to [plaintiff's] . . . trust account." Salierno admitted plaintiff moved for the funds a "substantial amount of time" after defendant's charges were dismissed. He argued plaintiff had a likelihood of success under the Act because the federal court entered an "order of dismissal" and "order for the return of personal property . . . as a result of . . . plaintiff's professional work."

The court, during argument, raised the following concerns: whether plaintiff advised defendant that the Department of Homeland Security was seeking to return his property; the ability to locate defendant; whether defendant provided notice of plaintiff's application for the funds to be deposited in its trust account; and the appropriateness of plaintiff unilaterally moving for the funds when the parties' "interests were adverse." The court also noted plaintiff failed to address whether defendant had "child support orders" or "owed the IRS money." The court denied plaintiff's OTSC seeking a stay and reiterated its finding that the consent order releasing defendant's seized funds to plaintiff was not "a judgment, decision or award of damages by the federal district court" to which a lien could attach. Martin v. Martin, 335 N.J. Super. 212, 222-25 (App. Div. 2000).

Plaintiff filed an emergent application with this court seeking a stay, which we denied. On appeal, plaintiff argues that the court erred in misapplying the Act and precluding the satisfaction of a valid judgment in its favor.

II.

We review "questions of law and the legal consequences that flow from the established facts are reviewed de novo." Granata v. Broderick, 446 N.J. Super. 449, 467 (App. Div. 2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). However, a court's factual findings are entitled to deference on appeal "when supported by adequate, substantial and credible evidence" in the record. Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974).

"An attorney's right to impress a lien on client property derives from the common law." Musikoff v. Jay Parrino's the Mint, L.L.C., 172 N.J. 133, 138 (2002). The Act, N.J.S.A. 2A:13-5, "codifies the common-law special or charging lien" and expanded "the common law lien which had attached only to a judgment." Ibid. (quoting Martin, 335 N.J. Super. at 222). The Act provides:

> After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for

compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whose hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien.

[N.J.S.A. 2A:13-5.]

An attorney's assertion of a charging lien is "'only a claim of right to ask for the intervention of the court' for the attorney's 'protection, when, having obtained judgment for his client, there is a probability of the client depriving him of his costs.'" Ippolito v. Ippolito, 465 N.J. Super. 428, 433 (App. Div. 2020) (quoting Republic Factors, Inc. v. Carteret Work Unifs., 24 N.J. 525, 534 (1957)); see also Cole, Schotz, Bernstein, Meisel and Forman, P.A. v. Owens, 292 N.J. Super. 453, 460 (App. Div. 1996). "With the imposition of an attorney's lien, the court that rendered the award, judgment or order to which the lien attached must determine which claimant possesses the higher priority to the fund. To make that decision, the court must weigh the competing equities." Ippolito, 465 N.J. Super. at 433.

"The purpose of the attorney's charging lien is to prevent the attorney from being deprived of a fee after having performed legal services which result in the client obtaining something of value." Owens, 292 N.J. Super. at 461. "The lien is rooted in equitable considerations, and its enforcement is within the equitable jurisdiction of the courts." Martin, 335 N.J. Super. at 222.

In Granata, we recognized the following well-established procedures that attorneys must follow in seeking to enforce an attorney's lien:

> The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division . . . .
>
> [446 N.J. Super. at 466 (quoting H. & H. Ranch Homes, Inc. v. Smith, 54 N.J. Super. 347, 353-54 (App. Div. 1959)).]

Plaintiff contends reversal is warranted because the court failed to properly consider that defendant's funds were in its trust account "pursuant to a final order of the United States District Court," the funds were "properly subject to an attorney's lien," and "equitable factors bearing on the issue" were in plaintiff's favor. After a review of the record, we disagree.

We conclude plaintiff is not equitably entitled to assert its charging lien against defendant's funds because plaintiff failed to show it provided defendant with notice of its federal court application for his seized property. See RPC 1.4(b) ("A lawyer shall keep a client reasonably informed about the status of a matter."); see also RPC 1.4(c) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). The record also does not establish that plaintiff was still representing defendant at the time it moved for defendant's funds considering a year and a half had passed since defendant's charges were dismissed, and plaintiff had served defendant with a pre-action notice.[2] As noted by the court, the parties' interests were adverse at the time plaintiff applied for defendant's

---

[2] We have not been provided the parties' retainer agreement.

funds. Nevertheless, if plaintiff represented defendant, it failed to communicate with defendant regarding its actions taken before the federal court to release his property to its trust account.

Further, plaintiff did not comply with the procedural requirements of the Act. When plaintiff applied for the release of defendant's funds, it failed to assert its lien before the federal court on notice to defendant. We observe that our Supreme Court, in Musikoff,[3] addressed the Act's requirement that an attorney must move to enforce a charging lien in "[t]he court in which the action or other proceeding is pending." 172 N.J. at 140 (quoting N.J.S.A. 2A:13-5 (emphasis added)). The Court held the statute's "focus suggests that the drafters were more concerned with identifying the forum in which the lien petition would be evaluated and enforced than with limiting the period during which the petition could be filed." Id. at 141. Further, the Third Circuit has held that "ancillary

---

[3] The Supreme Court, pursuant to Rule 2:12A, was "called on to answer a question of law certified and submitted by the United States Court of Appeals for the Third Circuit." Musikoff, 172 N.J. at 136. Our Court addressed "[w]hether under New Jersey law, in order to enforce a lien under [N.J.S.A.] 2A:13-5, an attorney must file a petition to . . . enforce the lien prior to any . . . final judgment in the underlying matter in which the attorney provided services giving rise to the lien." Ibid. (second alteration in original). The Court addressed N.J.S.A. 2A:13-5's last sentence and whether it was "intended to control the forum where the petition is brought or the timing of the petition." Ibid.

jurisdiction over fee disputes between clients and former counsel" is appropriate "where resolution of the fee dispute enables the [federal] court to resolve the underlying action over which the court has jurisdiction." In re Cmty. Bank N. Va. Mortg. Lending Practices Litig., 911 F.3d 666, 672 (3d Cir. 2018). Here, instead of moving to enforce its charging lien at the time plaintiff applied to the federal court for the funds, plaintiff received the funds and then filed the present complaint approximately one month later. Plaintiff, in accordance with the Act, should have petitioned the federal court to enforce its lien.

Finally, we note plaintiff's complaint failed to disclose that plaintiff successfully obtained defendant's seized funds and intended to execute a charging lien pursuant to the Act against the funds. It is also troubling that plaintiff moved for summary judgment on its claims for attorney's fees but "did not bring . . . to the [c]ourt's attention" that it was holding defendant's $38,020 and intended to later seek to execute its charging lien against the funds. For these reasons, plaintiff cannot be "considered an equitable assignee of the [released funds] to the extent of his debt." Schepisi & McLaughlin, P.A. v. Lofaro, 430 N.J. Super. 347, 355 (App. Div. 2013) (quoting Republic Factors, 24 N.J. at 534). We therefore discern no error in the court's order denying

13

plaintiff's application to attach its charging lien to defendant's funds and directing that the $38,020 be returned to defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2151-24