**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3328-24

JOCELYN THOMAS,

    Plaintiff-Respondent,

v.

RAKEEM THOMAS,

    Defendant-Respondent.

_____

THE LAW OFFICES OF
RAJEH A. SAADEH, LLC,

    Appellant.

_____

        Submitted February 4, 2026 – Decided June 18, 2026

        Before Judges Smith and Jablonski.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-0752-22.

        Rajeh A. Saadeh, LLC, self-represented appellant (Cynthia L. Dubell, on the brief).

Netsquire, attorneys for respondent Jocelyn Thomas (John Nachlinger, on the brief).

PER CURIAM

The Law Office of Rajeh A. Saadeh, L.L.C. ("Saadeh") appeals from a judgment of divorce ("JOD") that, by its terms, deprived Saadeh of fees earned for representing defendant Rakeem Thomas in his matrimonial action. Because the trial court failed to address Saadeh's request for a charging lien pursuant to the Attorney's Lien Act[1] before it entered the judgment of divorce, we remand for a hearing to assess the amount of the lien to which Saadeh is entitled and, if appropriate, to modify the judgment of divorce accordingly.

## I.

On March 28, 2023, Saadeh entered an appearance on behalf of defendant, and Rachel Baxter, Esq., an attorney in Saadeh's office, was assigned as defendant's counsel. Saadeh's retainer agreement included a provision allowing him to "assert a lien on any amounts recovered by you in settlement or adjudication of your case for the amount you owe" if the "professional relationship" between Saadeh and defendant ended. Defendant signed this agreement.

---

[1] N.J.S.A. 2A:13-5.

On October 2, 2023, the parties to the litigation sold their marital residence, and the proceeds were deposited into Saadeh's trust account. The litigation continued, with the parties engaging in settlement discussions. In early April 2024, Baxter left Saadeh's law firm, and defendant chose to continue with Baxter as his attorney. At the time of this separation, defendant owed Saadeh $16,790.60 in legal fees. To collect these funds, Saadeh served defendant with a fee arbitration notice on April 3, 2024. Defendant did not request fee arbitration.

On April 30, 2024, the Family Part judge ordered Saadeh to transfer the escrowed proceeds from the sale of the property to the plaintiff's attorney's trust account. The judge noted that Saadeh "will be entitled to file a claim for legal fees due from [defendant], which shall be disbursed from [defendant]'s share that would be determined later from the funds at the time of resolution of this case."

On May 2, 2024, Saadeh moved to secure a charging lien on a portion of those funds. On the same day, Saadeh submitted a letter to the trial judge objecting to the entry of the April 30, 2024, order. In the letter, Saadeh explained that he was not present at the conference from which the order originated and was therefore "unaware or noticed that any order would be

3

entered at said conference that would impact [his] rights or impose obligations upon [him] as an interested non-party."  Although the charging lien motion was recently filed, Saadeh noted that the court "implicitly acknowledges [Saadeh's] entitlement to fees and a charging lien."

On May 13, 2024, Saadeh sued defendant in the Special Civil Part in Somerset County.  A default judgment was entered in Saadeh's favor on July 15, 2024, in the amount of $18,057.60.

On May 14, 2024, the Family Part scheduled a hearing regarding Saadeh's charging lien for May 20.  During the hearing, the court noted:

> So it's real simple, we will just leave [the contested amount] and pending the final determination in this matter, whether it is by way of settlement or a trial, at that point, again, the lien would attach to the share allotted to [defendant], either satisfying it in full, or if not, the remainder would be due by [defendant] [] [to] Saadeh's firm.
>
> So at this point . . . the [c]ourt will simply enter an order today that funds shall remain in the trust account of [] Saadeh pending the determination of the appropriate equitable distribution figures . . . .

Despite the court's statement on the record that the sale proceeds would remain in Saadeh's trust account, the court did not memorialize that statement in an order.

A-3328-24

On February 13, 2025, the Family Part Presiding Judge issued an order following a settlement conference attended by the parties and their attorneys; however, Saadeh was not present.

Following this proceeding, the court established a "litigation fund," directing counsel to receive monies from this fund to facilitate the resolution of the matter. The court acknowledged that Saadeh retained $44,280.49 from the sale of the parties' real property in his trust account and ordered that these funds be transferred to plaintiff's counsel's law firm. Additionally, the court noted that Saadeh had sought a charging lien, but observed that this motion had not been decided by the matrimonial trial judge.

Despite Saadeh's potential entitlement to these funds, the court ordered the disbursement of $15,000 to plaintiff's counsel and $5,000 to defendant's attorney, with these amounts to be drawn from the escrowed funds. The court further directed Saadeh to retain $10,000 in escrow, with the ultimate disposition of these funds to be determined at a later date. The court also enforced the trial judge's order requiring Saadeh to transfer the current escrow fund to plaintiff's counsel's trust account.

Upon receiving the court's order, Saadeh promptly objected, noting that he was not present at the conference, nor was he aware of or notified about it.

A-3328-24

Thereafter, the court amended its order on March 7, 2025. The court directed Saadeh to transfer $22,140.25 from the escrowed funds immediately to the trust account of plaintiff's counsel. Additionally, the court ordered the disbursement of $15,000 to plaintiff's counsel and instructed Saadeh to transfer $4,082.64 from the funds to defendant's attorney. Saadeh was further ordered to retain $18,057.60, with the ultimate disposition of these funds to be determined at a later date.

The parties continued their efforts to resolve the matter through mediation, although Saadeh did not participate in those proceedings.

On April 29, 2025, plaintiff's counsel informed the court that a settlement had been reached, but reported difficulties in obtaining cooperation from defendant's counsel. On June 4 and June 5, 2025, Saadeh received notification that there were new electronic filings in the matrimonial litigation. Saadeh then reviewed correspondence exchanged between counsel since April 2025, including a letter dated June 4, 2025, which enclosed a judgment of divorce and the matrimonial settlement agreement ("MSA") between the parties. Article II, Section 2.1 of the MSA addresses the parties' real estate:

> The former marital residence . . . was sold on [September 29, 2023]. Upon sale, the net proceeds in the amount of $44,280.09 were held in . . . [Saadeh's] trust account. The [March 7, 2025] [o]rder released

6

litigation funds and $18,058 of the net proceeds of the sale of the former marital residence still remains in [Saadeh's] trust account, [p]ursuant to the [March 7, 2025] [o]rder of the [c]ourt, [Saadeh] shall hold $18,057.60 in trust, the 'ultimate disposition of these funds shall be resolved at a future time.' In consideration of all of the issues regarding [d]efendant's noncompliance with the pendente lite [o]rders which included an obligation for [d]efendant to pay the mortgage and keep the mortgage in good standing, plaintiff shall receive the $18,057.60. Upon the entry of the Final Judgment of Divorce, an [o]rder for the release of $18,057.60 to the [p]laintiff shall be entered by the [c]ourt.

On June 5, 2025, Saadeh submitted a letter to the Family Part Presiding Judge objecting to both the entry of the order and the proposed disbursement.

In response, the Presiding Judge, through staff, emailed:

The parties entered into an MSA as to the divorce case on Monday. The judge signed the JOD on the papers today. The judge does not make any finding as to [the] MSA. The divorce is concluded. [Saadeh is not a party] to the divorce case and ha[s] no standing to object to the entry of the JOD. Whether they wish to take action on their judgment in a separate [proceeding] is up to them but this [c]ourt is not involved in that.

7

II.

On appeal, Saadeh argues the trial court erred by failing to decide the unopposed charging lien motion before the judgement of divorce was signed. We agree.

"An attorney's right to impress a lien on client property derives from the common law." Musikoff v. Jay Parrino's the Mint, L.L.C., 172 N.J. 133, 138 (2002). The Act "codifies the common-law special or charging lien" and expands "the common law lien which had attached only to the judgment." Id. at 139 (quoting Martin v. Martin, 335 N.J. Super. 212, 222 (App. Div. 2000)).

Attorneys' liens are rooted in equitable considerations "intended to protect attorneys who do not have actual possession of assets against clients who may not pay for services rendered." Martin, 335 N.J. Super. at 222. The statute for enforcing these liens, N.J.S.A. 2A:13-5, states, in pertinent part:

> After the filing of a complaint . . . the attorney . . . who shall appear in the cause for the party instituting the action . . . shall have a lien for compensation, upon his client's action . . . which shall contain and attach to a verdict . . . judgment or final order in his client's favor, and the proceeds thereof in whose hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order . . . . The court in which the action or other proceeding is pending, upon the

petition of the attorney . . . may determine and enforce the lien.

An attorney's assertion of a charging lien is "'only a claim of right to ask for the intervention of the court' for the attorney's 'protection, when, having obtained a judgment for his [or her] client, there is a probability of the client depriving him of his costs.'" Ippolito v. Ippolito, 465 N.J. Super. 428, 433 (App. Div. 2020) (quoting Republic Factors, Inc. v. Carteret Work Unifs., 24 N.J. 525, 534 (1957)). "With the imposition of an attorney's lien, the court that rendered the award, judgment, or order to which the lien attached must determine which claimant possesses the higher priority to the fund. . . . [T]o make that decision, the court must weigh the competing equities." Ibid.

"The purpose of the attorney's charging lien is to prevent the attorney from being deprived of a fee after having performed legal services which result in the client obtaining something of value." Cole, Schotz, Bernstein, Meisel and Forman, P.A. v. Owens, 292 N.J. Super. 453, 461 (App. Div. 1996).

To enforce the lien, an attorney must first file a complaint. Mateo v. Mateo, 281 N.J. Super. 73, 79 (App. Div. 1995). This petition or complaint may be filed before the conclusion of the underlying action or after the matter is resolved by judgment or settlement. Musikoff, 172 N.J. at 136.

A-3328-24

Although N.J.S.A. 2A:13-5 does not establish a procedure for enforcement of the lien, we have developed this method:

> The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth facts upon which [the attorney] relies for the determination and enforcement of [the] alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of [this] order, together with a copy of the petitioner shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried with or without a jury, in the Law Division . . . .
>
> [Schepisi & McLaughlin, P.A. v. LoFaro, 430 N.J. Super. 347, 356 (App. Div. 2013) (quoting H&H Ranch Homes, Inc. v. Smith, 54 N.J. Super. 347, 353 (App. Div. 1959)).]

In light of these principles, we conclude Saadeh is equitably entitled to assert a charging lien against defendant's funds. Saadeh strictly followed all procedures required to perfect the lien. After the parties separated, and according to his retainer agreement, which stated that Saadeh would seek a lien, he notified defendant of the right to pursue fee arbitration. When the defendant did not pursue arbitration, Saadeh filed a separate lawsuit to recover

10

his fees and obtained a default judgment. He then timely filed a request for a charging lien.

Throughout the entire process, Saadeh notified the court and all parties, including the current attorneys, about the existence and status of his lien. However, despite their clear awareness of his pending claim, the filed motion, and his asserted legal right to the funds, the motion was never heard, and no order was issued that would have given Saadeh notice nor an opportunity to be heard.

Despite this knowledge, the parties proceeded with a property settlement agreement that effectively eliminated the funds to which Saadeh may have been entitled, thereby depriving him of the chance to protect his interest.

Although the underlying matrimonial proceedings have concluded, Saadeh is still equitably entitled to a resolution of the matter he filed. Fundamental due process requires nothing less. Therefore, we remand to the Family Part for a hearing on this unresolved application. As part of this hearing, the remand judge shall reopen the MSA to consider Saadeh's charging lien. After the lien hearing, the judgment of divorce shall be amended as appropriate.

Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

11                                                      A-3328-24