**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0755-17T1
A-0874-17T1

GLODACK CONSULTING, INC.,
a New Jersey Corporation,

     Plaintiff,

v.

DTL HS HOLDINGS LIMITED
LIABILITY COMPANY, a New
Jersey Limited Liability Company,
and L&S MOTORS, INC., a New
York Corporation with an assumed
name of HUNTINGTON HONDA,

     Defendants.

_____

Argued November 15, 2018 - Decided August 27, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. F-007622-11.

Francis X. Riley, III, argued the cause for appellant Michael Saporito in A-0755-17 (Saul Ewing Arnstein & Lehr LLP, attorneys; Francis X. Riley, III and Michael Rowan, on the briefs).

Hervé Gouraige argued the cause for appellant Don T. Lia in A-0874-17 (Sills Cummis & Gross, PC, attorneys; Hervé Gouraige and David Lawrence Cook, of counsel and on the briefs).

George T. Dougherty argued the cause for respondent Katz & Dougherty, LLC in A-0755-17 and A-0874-17 (Katz & Dougherty, LLC, attorneys; George T. Dougherty, on the brief).

PER CURIAM

Michael Saporito appeals in A-0755-17 from Judge Innes's October 12, 2017 order imposing an equitable attorney's lien in favor of lawyers Katz & Dougherty, LLC and Lisa Richford against property Saporito acquired pursuant to a settlement agreement approved by Judge Innes, and permitting the lawyers to commence foreclosure proceedings within thirty days of the order on Saporito's failure to make payment in full. Don T. Lia, who holds a purchase money mortgage on the property given as part of the same settlement, appeals from the same order in A-0874-17.

We denied Saporito's motion to stay the order, finding no likelihood of success on the merits of the appeal. See Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982). Having now read the briefs in both matters and had the benefit of oral argument on both appeals, we consolidate the matters for purposes of this

2

opinion and affirm for the reasons expressed by Judge Innes on the record on July 25, 2017.

This order had its genesis in a foreclosure action filed in Mercer County in 2011 by Richford on behalf of Glodack Consulting, Inc. against Lia's companies DTL HS Holdings LLC and L&S Motors Inc., a/k/a Huntington Honda. DTL had given Glodack Consulting a mortgage on property known as Frank's Nursery to secure a $1.9 million note, personally guaranteed by Saporito. Lia asserts that DTL's purchase of the property in 2005 was part of a larger real estate deal in which a Saporito company bought a nearby parcel to build a Honda dealership.

Lia claims he let Saporito park dealership cars on the Frank's Nursery property but stopped when he and Saporito got into a larger dispute on unrelated matters. See Lia v. Saporito, 909 F. Supp. 2d. 149 (E.D.N.Y. 2012), aff'd, 541 Fed. Appx. 71 (2d Cir. 2013), cert. denied, 572 U.S. 1116 (2014). Lia claims Saporito removed his cars from the Frank's Nursery property, but also stopped the payments he had been making to Glodack Consulting on the $1.9 million note, precipitating the foreclosure. The parties agree that Lia's defenses to the foreclosure "implicated disputes between the Lia entities and the Saporito entities."

3

After years of litigation, the foreclosure case finally went to trial in August 2015. On the second day of trial, Lia claims just before Saporito was scheduled to testify pursuant to Lia's subpoena, the case settled. Lawyers for the parties, their principals and Saporito put the terms on the record before Judge Innes. Glodack Consulting agreed to release and discharge the $1.9 million note and mortgage it was foreclosing in order to allow DTL to sell the property free and clear to Saporito, or an entity he would create. Saporito agreed to execute a five-year, $1.9 million unsecured note at five percent interest to Glodack Consulting, with interest-only payments of $9000 a month and a balloon payment at the end of the term, and to indemnify and "pay $210,000 to reimburse Glodack for part of the attorneys' fees incurred through his representation by Katz and Dougherty, LLC[1]. . . in equal monthly installments of $3500 for 60 months."

L&S Motors, a Lia entity with a long-term lease on the Frank's Nursery property, agreed to assign the lease to Saporito. DTL, L&S and Lia agreed to execute a consent order to release escrowed rent payments to Glodack Consulting. DTL agreed to sell the Frank's Nursery property to a Saporito entity,

[1] By the time of trial, Richford had left solo practice and joined Katz & Dougherty.

4

645 Holdings, LLC, for $4.025 million with no money down, secured by a five-year note at four percent interest, a first mortgage on the property, and Saporito's unconditional personal guaranty. Lia also agreed to convey his interest in four parcels jointly owned with Saporito on Crosswicks-Hamilton Square Road to Saporito for $1.6 million to be paid over five years with interest at four percent, secured by a note and Saporito's personal guaranty.

Although Richford had a signed retainer agreement with Glodack Consulting with a $550 hourly fee arrangement, President Steven Glodack represented the company lacked the resources to fund the litigation or pay attorney's fees. Richford accordingly advanced the costs of the case agreeing she would be paid from the proceeds of the foreclosure, an arrangement continued when she joined Katz & Dougherty. The matter was aggressively litigated with Richford, and later Katz & Dougherty, representing Glodack Consulting in twelve depositions, eighteen motions, ten case management conferences and having responded to voluminous discovery demands before finally preparing for and appearing at trial.

Glodack negotiated the settlement directly with Lia and Saporito the evening after the first day of trial. When he advised his lawyers of the agreement the following morning, they discussed payment of the legal fees. Richford

estimated the fees to be $500,000. Richford expressed a willingness to accept $400,000 in full payment and Saporito agreed to indemnify Glodack for up to $210,000 of the fees he owed his lawyers by making monthly payments of $3500 for five years, leaving the remaining $190,000 to be paid by Glodack. Saporito's agreement was read into the record as part of the settlement terms. Richford and Dougherty continued to negotiate payment of the remainder of the fee with Glodack, with the firm insisting on receiving at least some of the remainder in a lump sum from the approximately $150,000 in rental proceeds in their trust account and Glodack requesting itemization of the fees.

As Richford and Dougherty worked to document the global settlement over the next few months, their relations with Glodack soured over payment of their fees and Glodack's dissatisfaction with the settlement. Glodack demanded an immediate release to him of all fees held in escrow and eventually refused to pay the firm anything. The firm sent Glodack an itemized bill for $625,154.31 in fees and $12,300.88 in expenses and advised him of his right to seek fee arbitration. Shortly before final execution of the settlement documents, they advised Judge Innes of these facts by way of certification, as well as their outstanding offer to accept $400,000, inclusive of the $210,000 Saporito

A-0755-17T1

payment, and petitioned for imposition of a lien on the proceeds of the settlement.

On the day noticed for the plenary hearing on the petition, Glodack failed to appear in court. After delaying the proceedings to see whether Glodack or a representative would appear, Judge Innes heard the firm's proofs and subsequently granted its unopposed petition approving an attorney's lien in favor of the firm for fees of $625,154.31 and costs of $12,300.88[2] against all proceeds of the foreclosure litigation, including all funds representing ground lease payments held in the firm's trust account, ground lease payments due to Glodack Consulting for August through November 2015 pursuant to the settlement agreement, and all payments due to Glodack Consulting from Saporito pursuant to the settlement agreement "in consideration of its dismissal of this matter against the defendant mortgagor and of its release and discharge of the defendant mortgagor," including the $210,000 due from Saporito to Glodack Consulting as reimbursement for a portion of Glodack's attorney's fees.

Judge Innes the following day entered a final judgment at the request of the signatories, approving the settlement agreement, "finding it to be consistent

---

[2] The total amount of the lien was subsequently amended by order of May 16, 2017, denying Glodack Consulting's Rule 4:50-1(c) motion but reducing the total amount of the lien to $630,780.19.

A-0755-17T1

with the terms read into the record with the consent of all parties and non-parties on August 12, 2015, and that the Settlement Agreement is effective and binding upon entry of this Judgment." The judgment also approved the consent order releasing funds in escrow to Katz & Dougherty.

After Katz & Dougherty obtained approximately $26,000 of the fees owed from escrow and $7,495.62 due to Glodack Consulting from Saporito for his share of the three months of ground lease payments due under the settlement agreement, Katz & Dougherty learned that Glodack had released Saporito from his $1.9 million obligation under the settlement agreement, leaving Katz & Dougherty without a fund from which to collect their fees. The firm filed a motion to enforce its lien, and Judge Innes signed an order directing Saporito and Glodack to provide the firm with a fully executed copy of the settlement agreement, discovery under oath regarding modification of the agreement and an accounting of any monies due or received from one to the other or entities either controlled.

Glodack made no response to the order. Saporito filed an affidavit with the court averring that he did not execute the note to Glodack Consulting at the closing when the Frank's Nursery property was transferred "based on Steve Glodack's agreement with me that a credit would be applied against the $1.9

[million] set forth in the Settlement Agreement which equaled the amount of money I loaned him over the course of several years" prior to the parties' settlement of the foreclosure matter.

Saporito also swore that "[w]hen Steve Glodack executed the Settlement Agreement he knew I had not and would not be executing the Note." Saporito averred that Glodack subsequently informed him that Glodack was releasing him from his "obligation under the Settlement Agreement with respect to the execution of any promissory note, the payment of any portion of the $1.9 [million] reflected in the Settlement Agreement, and all other payment and indemnity obligations set forth in the Settlement Agreement." Finally, Saporito swore

> [t]he aggregate amount of money that I loaned Steve Glodack over a period of approximately five and one-half (5.5) years and which he agreed would be applied against any amount I owed him under the Settlement Agreement or otherwise is $658,000.00. However, as previously stated, Steve Glodack released me from any and all monetary claims, obligations, debts and promises known about before and after the execution of the Settlement Agreement.

After receipt of the response from Saporito, Katz & Dougherty filed a second motion to enforce its lien. Arguing that Glodack and Saporito submitted a settlement agreement to the court for approval "with an undisclosed intent that

they would not be bound," the firm asked the court to enforce its order that they produce a fully executed copy of the settlement agreement, declare any modification to the agreement void ab initio, and direct payment by Saporito of all payments due under the agreement. Both Glodack and Saporito filed opposition to the motion.

On the return date, the court recounted how contentious the foreclosure had been, "I'm talking years of a history of contentiousness between these parties," and then, at settlement, how all three men had represented to the court that there was a $1.9 million obligation from Saporito to Glodack that the court was now advised, after an order granting Katz & Dougherty a statutory attorney's lien, was "suddenly forgiven." Noting neither Glodack nor Saporito had produced any record of the $658,000 Saporito had supposedly lent to Glodack, the court deferred decision on Katz & Dougherty's application and granted its request for discovery of five years of their personal tax returns and those of any entities they controlled.

The court explained it was ordering production of the tax returns "because of a clear suspicion with regard to what was going on between Saporito and Glodack." The court noted that if what was being represented about these loans "is accurate," it would be "verified and confirmed by any tax returns because

A-0755-17T1

what Mr. Glodack expects this court to believe is that he forgave a $1.9 million loan from Mr. Saporito. And if that were done, of course we all have to recognize that would have been income to Mr. Saporito." Production of the tax returns would permit confirmation of the loan in the absence of any other record.

Glodack's counsel filed opposition to the proposed form of order, arguing Glodack Consulting ceased doing business in 2007 and "as a result has not filed any State or Federal income tax returns since that time." Counsel also represented "[t]he same goes for Mr. Glodack personally as well as [his company] Atlantic Explore Diver, Inc." Saporito, in lieu of producing his tax returns, entered into a consent order stipulating that Saporito's federal and state income tax returns for 2010-2015 "do not document 'income' related to transactions engaged in with Glodack or with [Glodack Consulting] or any person related to either of them, including the waiver and release by [Glodack Consulting] or Glodack of Saporito's obligations to [Glodack Consulting] pursuant to the Settlement Agreement," that he had not been issued "an IRS 1099 form by Glodack or [Glodack Consulting] reporting the waiver and release of his obligations under the Settlement Agreement" and that he had not "issued (or caused to be issued) an IRS 1099 to Glodack or to [Glodack Consulting] relating to amounts credited to Glodack from the repayment of loans as set forth in prior

11

certifications" to the court and did "not intend to make any related disclosures for the years 2016 or 2017 in his related IRS and State tax returns."

Following receipt of proof from Saporito that there is no record of any loans between Glodack and Saporito and that Saporito did not declare the $2.1 million forgiveness of obligations undertaken in the settlement agreement as income to the taxing authorities, Katz & Dougherty renewed its motion to enforce its attorney's lien. The firm asked the court to declare that Saporito's obligations under the settlement agreement "continue to be binding and enforceable by all parties to whom the Agreement inures" and that no agreement between Glodack Consulting or Glodack and Saporito was "effective to waive, alter [or] diminish" Saporito's obligations to Glodack or Glodack Consulting under the settlement agreement "by operation of N.J.S.A. 2A:13-5," the attorney's lien statute. The firm sought an order directing Saporito to make all payments due under the agreement directly to Katz & Dougherty until the full amount of the lien balance, $452,377.60, was satisfied.

Saporito opposed the motion and submitted a certification to the court averring on "legal advice of tax counsel" that he had no obligation to report as income Glodack's 2016 waiver and release of Saporito's obligations in the settlement agreement. Saporito argued he was not a party to the foreclosure and

A-0755-17T1

thus "not subject to any potential claim by [Glodack Consulting] relative to DTL's default under its mortgage or note." Saporito explained that because he and Lia "had several on-going unrelated business disputes and because [he] wished to purchase the Frank's Property from DTL which required the resolution of [Glodack Consulting's] foreclosure action against DTL," he "voluntarily agreed to include the resolution of his disputes with DTL, which would include the purchase of the Frank's Property, as part of the settlement agreement."

Saporito asserted that his involvement was thus "not the settlement, discharge or release of any causes of action asserted in the action by [Glodack Consulting] or DTL against" Saporito "as no such causes of action existed." He asserted Lia and DTL sought approval of the settlement agreement "in an attempt to take advantage of certain 'income' exceptions to tax regulations that they believ[ed] were applicable if the transfer of the Frank's Property was required by court order." Saporito asserted his obligations under the settlement agreement ran to Glodack not Glodack Consulting, and nothing in the settlement agreement "prohibit[ed] any party from compromising, reducing, or even releasing or foregoing a benefit it stood to receive" under the agreement.

Saporito acknowledged that the ground lease payment of $7,495.62 he made at closing on the Frank's Property, which was owed by DTL but which

13

Saporito agreed to make on its behalf for the benefit of Glodack Consulting as "part of the consideration Mr. Saporito paid for the Frank's Property" pursuant to the settlement agreement, was "an example of actual proceeds of the Settlement Agreement to which the charging lien appropriately applied: Payment was due, payment was made, and the lien applied." Saporito reiterated, however, that Glodack waived and released him at closing from executing the balloon note called for in the settlement agreement "in light of Steve Glodack's acknowledgment and agreement that a credit was due," adding "[t]hus it was contemplated that a note of a different amount would subsequently be negotiated" (emphasis added). Saporito asserted he and Glodack agreed "that because the amount of the Promissory Note should be reduced, that it should not be executed" by Saporito "but rather a Promissory Note for a lower amount should be prepared and executed after the Settlement Agreement was executed."

Saporito acknowledged that his execution of the promissory note attached to the settlement agreement "would have created a creditor-debtor relationship" between Glodack and himself, but Glodack, "as the party who stood to become a creditor" under the note, waived Saporito's "obligation to create the obligation." He argued, "[i]n reality, however," Glodack's waiver "actually served to reduce the value of the consideration to be provided" by Saporito "in

14

exchange for DTL's transfer of the Frank's Property to him."  Saporito thus reasoned,

> [a]ccordingly, [he] never owed a debt to [Glodack Consulting] or Mr. Glodack that was released, does not currently owe a debt to either, was never subject to a claim, cause of action or chose in action or final judgment owed by [Glodack Consulting] or Steve Glodack and there are no proceeds paid or payable, which are maintained in an account or otherwise.

Judge Innes rejected those arguments.  After hearing argument, the judge placed his findings of fact and conclusions of law on the record as follows:

> Katz and Dougherty's original involvement in this case, actually Ms. Richford's original involvement and then Katz and Dougherty's involvement, was to represent Glodack Consulting with regard to the foreclosure of a 1.9 million dollar mortgage on property known as Frank's Nursery.  That property was mortgaged by DTL and its principal, Don Lia, to [Glodack Consulting].  Mr. Michael Saporito was a guarantor on the note underlying that mortgage.
>
> This is a long and torturous litigation.  It's involved a number of court appearances.  And in fact the case was not settled until the second day of trial. The settlement agreement was a rather complicated and lengthy settlement agreement.  And it in fact brought into the settlement agreement, Mr. Saporito.
>
> Mr. Saporito had obligations, but also benefitted from the settlement agreement.  His benefit was his right to have the property, Frank's Nursery, conveyed to him free and clear of the Glodack Consulting

15

mortgage. And as I said, that mortgage was originally [a] 1.9 million dollar mortgage.

And his obligation was to make payment to the Katz and Dougherty law firm for up to $210,000 in legal expenses on behalf of Glodack.

Subsequent to the parties' settlement agreement it is claimed by Mr. Saporito that Mr. Glodack forgave Mr. Saporito's responsibility to pay him any attorney's fees earned by Katz and Dougherty. And as I said already, the Katz and Dougherty firm does have an attorney's charging lien in this case.

That charging lien is pursuant to N.J.S.A. 2A:13-5. And that statute reads as follows: "After the filing of a complaint or third party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counselor-at-law, who shall appear in the cause for the parties instituting the action or maintaining the third party claim or counterclaim or cross-claim, shall have a lien for compensation upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor and the proceeds thereof in whosoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending upon the petition of the attorney or counselor-at-law, may determine and enforce the lien."

Here the cause of action, which [Glodack Consulting] retained first Ms. Richford and Katz and Dougherty was the prosecution of the foreclosure of the 1.9 million dollar mortgage on the Frank's Nursery

16

property. Certainly as explained during argument, if Katz and Dougherty had proceeded to judgment and were successful in prosecuting the foreclosure matter on behalf of [Glodack Consulting], Katz and Dougherty would have had a right to either go against the proceeds of any third party purchase of the property at sheriff's sale or if the property were to be struck to [Glodack Consulting], a right to any proceeds from either the sale of the property or to have the property sold to satisfy the Katz and Dougherty charging lien.

What Mr. Glodack has attempted to do here is to try to undercut Katz and Dougherty's right to the charging lien by allegedly forgiving Mr. Saporito the obligation to pay the Katz & Dougherty legal fees.

And I say I have problems just with the way that that was structured. The fact of the matter is I have my doubts about whether or not there was in fact a forgiveness of the debt by Mr. Glodack.

And I say that because apparently Mr. Saporito has indicated that he never claimed the 1.9 million dollar debt forgiveness as income on any report to any taxing authority. So I think that belies that what was claimed here actually occurred.

But that doesn't really affect my decision here, but I just point it out because I do think it goes to why there is a need for the court to exercise its equitable powers in this particular case.

So as I said, what Mr. Glodack attempted to do was to undercut Katz and Dougherty's right to collection of its fees pursuant to its charging lien by forgiving the Saporito indebtedness on the property.

17

The charging lien is "intended to protect attorneys who do not have actual possession of assets against clients who may not pay for services rendered." Martin v. Martin, 335 N.J. Super. 212, 222 [App. Div. 2000].

The lien is rooted in equitable considerations. And its enforcement is within the equitable jurisdiction of the courts. That's also from Martin at page 222.

The charging lien as termed [is] "really a claim to the equitable intervention of the court for the attorney's protection when having obtained judgment for his client if there is probability of the client depriving him of his costs." Cole, Schotz, Bernstein, Meisel and Forman, P.A. v. Owens, 292 N.J. Super. 453, 460 (App. Div. 1996).

The common-law charging lien is a judicial device to protect the attorney's rights where he has been unable to get possession. To this end the attorney is considered an equitable assignee of the judgment to the extent of his debt. Republic Factors v. Carteret Work Uniforms, 24 N.J. 525, 534 (1957).

The statute not only modified the charging lien that existed at common-law, but expanded the common-law lien, which had attached only to a judgment. Musikoff v. Jay Parrino's The Mint, L.L.C., 172 N.J. 133, 139 (2002).

The statute in its pertinent part provides that an attorney appearing for a client in any action asserting a claim "shall have a lien for compensation upon his client's claim," which shall attach to any "verdict, report, decision, award, judgment, or final order in his or her client's favor and the proceeds thereof in whosoever's hands they may come." Schepisi &

18

McLaughlin, P.A. v. LoFaro, 430 N.J. Super. 347, 355 (App. Div. 2013).

An attorney's statutory lien is one that's impressed upon the client's interest in the claim of judgment and can rise no higher than that interest. Hobson Construction Company v. Max Drilling Incorporated, 158 N.J. Super. 263, 268 (App. Div. 1978).

Here the court finds that the stipulated settlement agreement that was fully, freely and voluntarily entered in by the parties, including Mr. Saporito, on February 25th, 2016 is a decision that was in the favor of [Glodack Consulting] and Mr. Glodack.

The cause of action against which the charging lien applies is the foreclosure action that was brought on behalf of [Glodack Consulting]. As I said earlier, . . . but for the agreement in this case, there would never have been a conveyance of the Frank's Nursery property to Mr. Saporito free and clear.

Mr. Glodack's attempt to avoid the payment of attorney's fees and the payment of the attorney's fees through the auspices of the settlement agreement cannot be countenanced by this court. The fact of the matter is Katz and Dougherty should at least have exactly what it would have been entitled to had the matter not been settled. And that would be an equitable lien against the Frank's Nursery property.

So I'm going to grant the application of Katz and Dougherty for enforcement of the court's prior orders by the imposition of an attorney's charging lien on the Frank's Nursery property. I'm going to direct that Mr. Saporito has 30 days to make payment of the amount of

19

$459,052.60, which is the outstanding balance on the Katz and Dougherty attorney's fees.

Saporito and Lia objected to the form of the order drafted by Katz & Dougherty. Saporito argued the settlement agreement did not obligate him to make any lump sum payment, and thus the court's ruling "effectively imposes on Saporito obligations that he did not agree to undertake whether on the record" or in the executed settlement agreement. He argued "it would seem just and equitable for the payment terms [to] be no different than agreed to" by DTL, Glodack and Saporito. Saporito further argued that "[e]rroneously affording" Katz & Dougherty first-lien status "also raises the possibility that Mr. Lia will declare his mortgage and note in default and claim Saporito owes him the full $4.025 [million]." Counsel represented that Saporito would not be able to repay the total amount of the note as "he neither has the funds nor can refinance the Property because its current value is less than the mortgage" amount.

Lia and DTL objected to the form of order because it would impose a superior lien on the Frank's Nursery property, adversely affecting its mortgage. Lia took no position on the dispute between Saporito and Katz & Dougherty regarding the payment of the firm's fees. He only noted that after four years of litigation, the settlement agreement permitted DTL to transfer the Frank's Nursery property "free and clear" of Glodack Consulting's $1.9 million

mortgage "in return for a note and mortgage in the amount of $4.025 million." In order to accomplish that, Lia explained "it was necessary to get Glodack Consulting to discharge that mortgage as part of the settlement terms before such transfer." In return for that discharge, "Glodack Consulting got Saporito to agree to pay the $1.9 million note that had been secured by the original mortgage upon which DTL was originally sued in this action." Lia complained the proposed order "if approved by the court, threatens to undermine and unravel this complex settlement structure."

Lia argued that as Glodack Consulting never obtained the property, which was instead transferred to a third party, placing a lien on the Frank's Nursery property "would impermissibly place a lien on the property of another lawyer's client, not its own client's settlement proceeds." Lia claimed imposing a first lien on the Frank's Nursery property in favor of Katz & Dougherty "would unfairly penalize [him] by having his interest subordinated to [the firm's] after a carefully negotiated complex and balanced settlement by all the parties." Lia did not challenge Saporito's claim that the property was under water, as the face value of the mortgage exceeded its market value.

Judge Innes rejected those arguments, entering the October 12, 2017 order making Katz & Dougherty's charging lien in the amount of $459,052.60 a first

21

lien against the Frank's Nursery property, which the firm could file an action to foreclose if Saporito failed to make payment in full within thirty days of the order.

Saporito and Lia appeal, reprising their arguments to the Chancery court, most prominently that the property against which the court imposed the charging lien is not "proceeds of the foreclosure action" and that the court "inequitably rewrote the parties' settlement agreement."

We reject those arguments. Saporito and Lia misapprehend the nature of the order they appeal. When the court approved the settlement agreement and incorporated it into the final judgment ending the foreclosure action, it had already imposed a statutory lien against the proceeds to which Glodack Consulting was entitled in whosoever "hands they may come." N.J.S.A. 2A:13-5.

Saporito concedes those proceeds would certainly have included the payments on the $1.9 million balloon note and the $210,000 specifically earmarked for Katz & Dougherty's fees had Glodack not determined to release him from those obligations. That release was done in anticipation of a future note that "would subsequently be negotiated" to reflect a $658,000 credit for monies Saporito had allegedly lent Glodack years before, of which the parties

were necessarily aware when they put the terms of the settlement agreement on the record, and for which there are apparently no records.

Lia concedes his $1.9 million mortgage to Glodack Consulting was in default, the foreclosure trial had commenced, and in order to transfer the property to Saporito in exchange for a $4.025 million note, "it was necessary to get Glodack Consulting to discharge" the mortgage it was foreclosing "as part of the settlement terms." The consideration for that discharge was, of course, Saporito's promise to execute the balloon note and indemnify Glodack for $210,000 of his legal fees, a critical part of the "carefully negotiated complex and balanced settlement by all the parties" which mysteriously evaporated after Judge Innes's imposition of the charging lien.

The Chancery court was not attempting to enforce the parties' settlement; indeed, quite the opposite. Judge Innes carefully explained why he felt compelled to exercise his equitable powers in the face of Glodack and Saporito's attempt "to undercut Katz and Dougherty's right to collection of its fees pursuant to its charging lien." "Equity will not knowingly become an instrument of injustice." Warner v. Giron, 141 N.J. Eq. 493, 498 (Ch. 1948).

The parties were, of course, free to negotiate as complex a settlement of the foreclosure case as they liked, involving new parties and different properties

in order to achieve their goals.  Glodack and Lia could have done so and simply advised the court the case had settled and filed a stipulation of dismissal.  See R. 4:37-1(a).  When they and Saporito, however, asked the court to approve their settlement and incorporate it into a judgment, for whatever their reasons, be it supposed tax advantages or otherwise, they submitted themselves to the court's equitable oversight of enforcement of that judgment as an order of the court.  See Haynoski v. Haynoski, 264 N.J. Super. 408, 414 (App. Div. 1993).

Having found inequitable conduct in the implementation of the settlement agreement for which the parties invoked the court's approval and oversight, the court was compelled to fashion an equitable remedy.  "[T]hat equity 'will not suffer a wrong without a remedy'" is, as our Supreme Court has noted "the maxim lying at the very foundation of equitable jurisprudence."  Crane v. Bielski, 15 N.J. 342, 349 (1954).  We are satisfied the remedy the court chose was both fair and no broader than necessary to achieve substantial justice under the circumstances.

The court was undoubtedly correct that had the foreclosure been successfully litigated to conclusion, Katz & Dougherty would have had a lien "against the proceeds of any third party purchase of the property at sheriff's sale or if the property were to be struck to [Glodack Consulting], a right to any

proceeds from either the [private] sale of the property or to have the property sold to satisfy the Katz and Dougherty charging lien." We find nothing "inequitable" in Judge Innes's determination to provide the firm the same right in these circumstances. Both Saporito and Lia achieved substantial benefits from this settlement, which remain largely intact. Having the Katz & Dougherty lien come behind Lia's mortgage would be no remedy at all, as Saporito, owner of the property, represents to us that Lia's mortgage exceeds the sum for which it could be sold. As these parties have already demonstrated their adeptness at refashioning agreements to suit themselves at the expense of others, the court's remedy of permitting Katz & Dougherty a first lien on the Frank's Nursery property appears a straightforward way of achieving a just result.

We accordingly affirm the order of October 12, 2017, substantially for the reasons expressed by Judge Innes in his thorough and thoughtful opinion from the bench on July 25, 2017.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0755-17T1